UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREYSTONE COMMUNITY REINVESTMENT ASSOCIATES, INC., | : : : | CIVIL ACTION NO. 3:02 CV 1703 (CFD) |
| Plaintiff, | : : | |
| v. | : : | |
| BEREAN CAPITAL, INC., | : : | |
| Defendant. | : | AUGUST 6, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF THE COURT'S RULING
ON THE DEFENDANT, BEREAN CAPITAL, INC.'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

McCARTER & ENGLISH LLP
Thomas J. Finn
Federal Bar No.: ct 20929
Paula Cruz Cedillo
Federal Bar No.: ct 23485
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Tel: 860.275.6700

Attorneys for Defendant
Berean Capital, Inc.

## INTRODUCTION

The defendant, Berean Capital, Inc. ("Berean"), respectfully submits this Memorandum of Law in support of its Motion for Reconsideration of the Court's Ruling on the Defendant, Berean Capital, Inc.'s Motion to Dismiss First Amended Complaint, dated August 6, 2004.

Berean requests this Court to reconsider its Ruling on Motion to Dismiss and Motion for Partial Summary Judgment, dated July 23, 2004 ("Ruling"), on the grounds that the Court did not apply the correct legal standard in determining that the plaintiff, Greystone Community Reinvestment Associates, Inc. ("Greystone"), satisfied its burden in establishing that Berean is subject to the jurisdiction of this Court. Greystone conducted jurisdictional discovery in this matter. As such, Greystone should have been held to a greater burden in establishing a prima facie showing of jurisdiction over Berean. Berean respectfully submits that if the Court had evaluated the evidence before it pursuant to this additional burden, the Court would not have found it to be sufficiently credible to establish jurisdiction. Accordingly, the instant motion for reconsideration should be granted.

## FACTS

Greystone commenced the instant action against Berean in the Superior Court of Connecticut on or about August 22, 2002, seeking damages for the purported breach of an alleged contract between the parties. The matter was removed to the United States District Court for the District of Connecticut on the basis of diversity jurisdiction. On or about December 16, 2002, Berean moved to dismiss the Complaint on the grounds, inter alia, that the Court lacks personal jurisdiction over Berean, and that Greystone's claims are barred by the applicable statute of limitations.

2

In response to the motion to dismiss, Greystone moved to compel jurisdictional discovery on or about January 3, 2003. Greystone's motion was granted by the Court on January 31, 2003. See Order, dated January 31, 2003 (attached to Motion for Reconsideration of the Court's Ruling on the Defendant, Berean Capital, Inc.'s Motion to Dismiss, dated August 6, 2004 ("Motion") as Exhibit A); see also Memorandum of Law in Support of Motion to Dismiss First Amended Complaint, dated June 6, 2003 ("Berean's Memorandum") at 3 (providing that Greystone conducted Court-ordered jurisdictional discovery). Accordingly, Greystone conducted jurisdictional discovery and deposed Mr. Dudley Brown, Berean's president and a resident of Illinois, on March 28, 2003, in Hartford, Connecticut. See Deposition of Dudley Brown, dated March 28, 2003 ("Brown Dep.") (attached to Affidavit of Howard B. Brown, Jr. in Support of Objection to Motion to Dismiss and in Support of Summary Judgment, dated July 25, 2003, ("Howard Brown Aff.") as Exhibit Q).

After Greystone conducted jurisdictional discovery, it filed the First Amended Complaint, dated April 10, 2003 ("First Amended Complaint") asserting new causes of action against Berean. By way of Motion to Dismiss First Amended Complaint, dated June 6, 2003 ("Motion to Dismiss"), Berean sought to dismiss the causes of action asserted in the First Amended Complaint on the grounds that the Court lacks personal jurisdiction over Berean, that the causes of action asserted fail to state a claim upon which relief may be granted, and that Greystone's fraud claims are not stated with sufficient particularity. While the Motion to Dismiss was pending, Greystone cross-moved for partial summary judgment on July 28, 2003. The Court heard oral argument on both motions on February 27, 2004. By its Ruling dated July 23, 2004, the Court denied both motions in their entirety.

## ARGUMENT

I. **Berean's Motion for Reconsideration Should be Granted Because, in Ruling on the Motion to Dismiss, Greystone Should Have Been Held to a Greater Burden in Establishing the Court's Personal Jurisdiction over Berean**

A motion for reconsideration may be granted where the motion sets forth matters that the Court may have overlooked that "might reasonably be expected to alter the conclusion reached by the Court." See Channer v. Brooks, No. 399CV2564, 2001 WL 1094964, at *1 (D. Conn. Sept. 10, 2001) (attached hereto as Exhibit 1). "[T]he function of a motion for reconsideration is to present the Court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence." Id.

Berean respectfully submits that there are matters which, if considered by the Court, might reasonably be expected to alter the Court's decision denying Berean's Motion to Dismiss for lack of personal jurisdiction. Particularly, the Court employed an improper standard in evaluating whether Greystone satisfied its burden of establishing jurisdiction over Berean. In setting forth the standard pursuant to which it was to determine the instant Motion to Dismiss, the Court stated that "[w]hen no discovery has been conducted, the plaintiff only needs to assert facts constituting a prima facie showing that the defendant's conduct was sufficient for the Court to exercise personal jurisdiction. In ruling, the court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant." Ruling at 3 (citing Amberelle Corp. v. Hommel, 272 F. Supp. 2d 189 (D. Conn. 2003); United States Surgical Corp. v. Imagyn Med. Tech., Inc., 25 F. Supp. 2d 40 (D. Conn. 1998)).[1] However, despite the Court's pronouncement to the contrary, Greystone did, in fact, conduct Court-ordered jurisdictional

---

[1] Indeed, the Court's citation to Amberelle Corp. and United States Surgical Corp. as authority is evidence that the Court employed an improper standard. See Ruling at 3, 6. The standard for determining jurisdiction set forth by these cases is inapposite to the instant matter as neither of these decisions involved the procedural posture of the instant matter where jurisdictional discovery has been conducted by the plaintiff. See Amberelle Corp., 272 F. Supp. 2d at 192-93; United States Surgical Corp., 25 F. Supp. 2d at 41-44.

discovery prior to filing the First Amended Complaint. Thus, Greystone's burden of proving the Court's jurisdiction over Berean is heightened under the applicable law.

When a court's exercise of personal jurisdiction over a defendant is challenged, the plaintiff bears the burden of establishing jurisdiction. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). That burden varies depending upon the procedural posture of the litigation. See, e.g., Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Musso v. Seiders, 194 F.R.D. 43, 48 (D. Conn. 1999). When no discovery has been conducted, the plaintiff can establish a prima facie showing of jurisdiction based merely upon legally sufficient allegations. See Ball, 902 F.2d at 197. However, "[a]fter discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the prima facie showing must be factually supported." Ball, 902 F.2d at 197 (internal citations omitted) (emphasis added); see also Musso, 194 F.R.D. at 48 (noting that a plaintiff has an additional burden in establishing a prima facie showing of jurisdiction after discovery is conducted and that a plaintiff cannot merely rely upon its allegations) (citing Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999)). This greater burden applies in circumstances where, as in the instant matter, the plaintiff has conducted jurisdictional discovery. See In re Magnetic Audiotape, 334 F.3d at 206.

As previously set forth, Greystone was granted leave to conduct, and did conduct, jurisdictional discovery in this matter. See Order, dated January 31, 2003; Brown Dep.; see also Berean's Memorandum at 3 (providing that Greystone conducted Court-ordered jurisdictional discovery); Memorandum of Law in Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for Partial Summary

Judgment, dated October 8, 2003 ("Reply Memorandum"), at 5 (same). Yet, it is clear from the Court's Ruling that it did not apply the heightened standard as required by applicable law, but rather, held Greystone to a more lenient burden in establishing a prima facie showing of jurisdiction. See Ruling at 6 (stating that this Court resolved all doubts in Greystone's favor). Indeed, if the Court had imposed the proper burden upon Greystone, Berean respectfully submits that the Court could not have reached the conclusion that Berean is subject to personal jurisdiction.

### A. The Evidence Submitted by Greystone is Not Sufficiently Credible to Establish Personal Jurisdiction over Berean

In denying the Motion to Dismiss, the Court ruled that the exercise of personal jurisdiction over Berean is proper pursuant to section 33-929(f)(1) of the Connecticut General Statues because Greystone made a prima facie showing that the contracts in dispute were to be performed in Connecticut. See Ruling at 5. However, if the Court were to reevaluate the Motion to Dismiss in light of the appropriate standard as set forth above, Berean respectfully submits that the Court cannot reasonably find that the jurisdictional allegations asserted by Greystone and the evidence submitted in support thereof are sufficiently credible to establish personal jurisdiction.[2]

### 1. The Confidentiality Agreement Was Not Intended to be Performed in Connecticut

In view of the heightened standard, it is clear that the Confidentiality Agreement, dated September 19, 1996 ("Confidentiality Agreement"), cannot be interpreted to have been intended to be performed in Connecticut. The Confidentiality Agreement, by its own express terms, was

---

[2] Only if the Connecticut long-arm statute authorizes the assertion of personal jurisdiction will the jurisdictional inquiry then turn to due process considerations. See Donner v. Knoa Corp., No. 3:01-CV-2171, 2002 WL 31060366, at *4 (D. Conn. July 29, 2002) (attached to Berean's Memorandum as Exhibit 2). Therefore, Berean does not address the Court's determination that its exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

entered into between Berean and First Union and prohibited First Union from using or disclosing certain confidential information. See Confidentiality Agreement (attached to Motion to Dismiss as Exhibit C). Thus, any performance under the Confidentiality Agreement was to occur in North Carolina, where First Union is located -- not Connecticut.

The Court held that the Confidentiality Agreement was to be performed in Connecticut because a press release indicated that the CRA securitization at issue was to be marketed to Massachusetts and Connecticut banks. See Ruling at 5; Press Release, dated September 8, 1997 (attached to Howard Brown Aff. as Exhibit L). By resolving all doubts in Greystone's favor and evaluating the Confidentiality Agreement and press release under the lesser standard for establishing jurisdiction, the Court determined this allegation as sufficient to satisfy the jurisdictional inquiry. However, under the heightened standard properly applicable to this matter, Greystone's reliance on a press release cannot and should not supplant the clear and express terms of the written agreement itself. See Donner v. Knoa Corp., No. 3:01-CV-2171, 2002 WL 31060366, at *4 (D. Conn. July 29, 2002) (attached to Berean's Memorandum as Exhibit 2) (denying the exercise of jurisdiction under section 33-929(f)(1) because the written contract between the parties did not contemplate or mandate performance in Connecticut); Gen. Star Indem. Co. v. Anheuser-Busch Co., No. 3:97-CV-2542, 1998 WL 774234, at *4 (D. Conn. Aug. 24, 1998) (attached to Berean's Memorandum as Exhibit 1) (denying the exercise of jurisdiction under section 33-929(f)(1) because, upon a review of the contract at issue, there was no contemplated performance in Connecticut). Indeed, Greystone failed to provide any foundation as to the press release or demonstrate whether this press release was ever actually disseminated, published, or whether identical language was even used.[3] As previously set forth,

---

[3] In its Ruling, the Court indicated that "Greystone notes that Berean issued a press release. . . ." Ruling at 5 (emphasis added). However, Greystone argues that the parties anticipated that the CRA securitization would be

7

Greystone is required to proffer <u>credible</u> evidence in support of its averments of jurisdiction. <u>See</u> <u>Ball</u>, 902 F.2d at 197; <u>Musso</u>, 194 F.R.D. at 48. No trier could reasonably afford greater weight to a press release over the clear and express terms of the Confidentiality Agreement itself. Moreover, the marketing of the anticipated CRA securitization -- regardless of whether it was to be in Massachusetts, Connecticut, or some other state -- has no reasonable bearing on <u>First Union's</u> obligation of performance in keeping certain information confidential, which is the sole purpose and scope of the Confidentiality Agreement. <u>See</u> Confidentiality Agreement.

Additionally, by the time the CRA securitization would have been marketed, First Union's duty not to disclose the information logically would have been rendered moot because the information would have to be made available to the public through the securitization. Indeed, by its own terms, the Confidentiality Agreement expired one year after its execution and did in fact expire on September 19, 1997. <u>See</u> Confidentiality Agreement at ¶ 7. There is no logical nexus between First Union's obligation under the Confidentiality Agreement to keep information confidential while evaluating the potential for such a securitization and the issue of whether the securitization would ultimately be marketed in Connecticut as set forth in the press release. Greystone's allegation in this regard is misplaced as, in determining personal jurisdiction, the Connecticut long-arm statute requires that the particular <u>contract</u> at issue -- in this case the Confidentiality Agreement and not the press release -- contemplate and require performance in Connecticut. <u>See</u> <u>Donner</u>, 2002 WL 31060366, at *4; <u>Gen. Star Indem. Co.</u>, 1998 WL 774234, at *4.

---

marketed in Massachusetts and Connecticut and cites to the press release in support of its contention. <u>See</u> Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Motion for Summary Judgment, dated July 28, 2003, at 13 ("[t]his is documented in the parties['] Joint Press release dated September 8, 1997"). Indeed, when shown a copy of the press release at his deposition, Dudley Brown testified that he did not remember ever seeing it and that it was "the first time that I've seen Connecticut on anything." Brown Dep. at 45-46.

### 2. The Placement Agent Agreement Was Not Intended to be Performed in Connecticut

The Placement Agent Agreement, dated June 9, 1997 ("Placement Agent Agreement") likewise cannot serve the basis for personal jurisdiction when viewed under the proper standard because it was neither intended to be, nor was it, performed in Connecticut. The Court held that the Placement Agent Agreement contemplated performance in Connecticut because "Greystone alleged that Berean performed partially under this agreement" by assisting Greystone in its suit against First Union, a suit that Greystone filed in the Connecticut District Court. See Ruling at 6 (emphasis added). However, such a tenuous allegation cannot reasonably be credited, particularly in light of the fact that, under the additional burden applicable to the jurisdictional inquiry in this matter, doubts are not to be construed in Greystone's favor.

An evaluation of the Placement Agent Agreement itself makes clear that this contract cannot support a finding of jurisdiction over Berean. As an initial matter, the language of the Placement Agent Agreement is structured so that the execution of a contract between Greystone and First Union in connection with the CRA securitization was a condition precedent to the existence and enforcement of the Placement Agent Agreement. See Placement Agent Agreement at ¶ 6. Because the CRA securitization was never realized, this condition precedent was not satisfied. As such, this contract cannot serve as a basis to subject Berean to this Court's jurisdiction as, by its own terms, the Placement Agent Agreement is void and unenforceable. See W. Alliance Inc. Co. v. Wells Fargo Alarm Serv., Inc., 965 F. Supp. 271, 278 (D. Conn. 1997) (citation omitted) (holding that if a condition precedent is not fulfilled, a contract is unenforceable). Even if the Court were to conclude that the Placement Agent Agreement was executed and valid, any agency relationship that may have existed between Berean and Greystone terminated when the CRA securitization was never realized in 1997. Greystone fails

to aver any basis for imposing an ongoing relationship between the parties that would extend Berean's purported obligations as Greystone's agent in 2001.

Furthermore, when evaluated under the appropriate burden, it is clear that the Placement Agent Agreement expressly limited the extent of Berean's agency, providing that Berean was not authorized to act as Greystone's agent or act on its behalf in any way except as set forth in the Agreement. See Placement Agent Agreement at ¶ 6. The existence and extent of an agent's duties are determined by the provisions of the parties' agreement. See Village On Canon v. Bankers Trust Co., 920 F. Supp. 520, 532-33 (S.D.N.Y. 1996). As such, Berean's purported assistance in connection with a litigation between Greystone and First Union is wholly unrelated to the limited authority that was provided to Berean under the Placement Agent Agreement to solicit the commitments and the purchase of certificates in connection with the CRA securitization and thus falls outside the scope of the Placement Agent Agreement. See Placement Agent Agreement. As such, this conduct cannot constitute performance of the Placement Agent Agreement and, therefore, cannot credibly support Greystone's assertion that this would establish the Court's jurisdiction over Berean.

Additionally, the Court also noted that, although the CRA securitization was initially to be marketed to Massachusetts, it was also expected to be presented in Connecticut as well. See Ruling at 6. In reaching this conclusion, however, the Court misapplied the appropriate standard and construed the allegations as true and in a light most favorable light to Greystone. Indeed, when viewed under the applicable standard, no trier could reasonably reach such a determination because it contradicts the plain language of the Placement Agent Agreement itself. The Placement Agent Agreement expressly and unequivocally provides for performance in Massachusetts -- there is no reference to Connecticut whatsoever in the written agreement. See

10

Placement Agent Agreement at ¶¶ 2-3, 7, 9, 12 (attached to Motion to Dismiss as Exhibit D). As previously stated, for purposes of determining jurisdiction, a Court need look no further than the language of the contract itself. See Donner, 2002 WL 31060366, at *4 (denying the exercise of jurisdiction under section 33-929(f)(1) because the written contract expressly contemplated performance in New York); Gen. Star Indem. Co., 1998 WL 774234, at *4 (denying the exercise of jurisdiction under section 33-929(f)(1) because, upon a review of the contract at issue, there was no contemplated or actual performance in Connecticut). Indeed, given the narrowly focused language of the Placement Agent Agreement that if the parties were to solicit commitments for the securitization in Connecticut, they would be required to execute an entirely new agreement, one that did reference Connecticut. As performance of the Placement Agent Agreement was not contemplated in Connecticut, it cannot serve as grounds to exercise personal jurisdiction over Berean.

## CONCLUSION

Based on the foregoing, the defendant, Berean Capital, Inc., respectfully request that the Court grant its Motion for Reconsideration of the Court's Ruling on the Defendant, Berean Capital, Inc.'s Motion to Dismiss, dated August 6, 2004, and grant the Motion to Dismiss the First Amended Complaint, dated June 6, 2003.

|  |  |
|---|---|
| Dated: August 6, 2004<br>Hartford, Connecticut | RESPECTFULLY SUBMITTED,<br><br>THE DEFENDANT,<br>BEREAN CAPITAL, INC.<br><br>By: *[signature]*<br>Thomas J. Finn<br>Federal Bar No.: ct 20929<br>Paula Cruz Cedillo<br>Federal Bar No.: ct 23485<br>McCARTER & ENGLISH LLP<br>CityPlace I<br>185 Asylum Street<br>Hartford, Connecticut 06103<br>Tel: 860.275.6700<br>Fax: 860.724.3397 |

## **CERTIFICATION**

  This is to certify that on this 6th day of August 2004, a copy of the foregoing was mailed, postage prepaid, to:

Eliot B. Gersten, Esq.
John J. Robacynski, Esq.
Gersten & Clifford
214 Main Street
Hartford, Connecticut 06106

_____
Thomas J. Finn

HARTFORD: 620160.01

Exhibit 1

Westlaw.

Not Reported in F.Supp.2d
2001 WL 1094964 (D.Conn.)
(Cite as: 2001 WL 1094964 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Claudious W. CHANNER, Petitioner,
v.
Warden Leslie BROOKS, Respondent

No. 399CV2564(CFD).

Sept. 10, 2001.

*RULING ON MOTIONS FOR RECONSIDERATION*

DRONEY, J.

**\*1** The petitioner has filed three motions for reconsideration [Documents # 10, 11, 12] of the Court's January 23, 2001 ruling denying his amended petition for a writ of habeas corpus without prejudice for failure to exhaust state court remedies. For the following reasons, the petitioner's motions for reconsideration are granted, but the relief requested is denied.

I. Standard for Reconsideration

The standard for granting a motion for reconsideration is strict. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995). Such a motion generally will be denied unless the "moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Thus, "the function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence." ' LoSacco v. City of Middletown, 822 F.Supp. 870, 876-77 (D.Conn.1993) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.1987)), aff'd, 33 F.3d 50 (2d Cir.1994). "[A] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F.Supp. 287, 289 (S.D.N.Y.1996) (internal citations and quotations omitted).

II. Timing of the Motions for Reconsideration

As an initial matter, the petitioner's second and third motions for reconsideration [Documents # 11, 12] are untimely because they were filed more than ten days after the Court's January 23, 2001 ruling. See D. Conn. L. Civ. R. 9(e). The petitioner's second motion for reconsideration was filed on February 23, 2001, thirty-one days after the filing date of the Court's ruling, and his third motion for reconsideration was filed on March 19, 2001, fifty-five days after the Court's ruling. However, the petitioner captioned these motions, in part, respectively, "Nunc Pro Tunc" and "Supplemental." The Court thus construes these motions as requests for permission to amend or otherwise supplement his first motion for reconsideration, which requests are granted; and the Court will consider all three of the petitioner's motions for reconsideration.

III. Basis for Reconsideration

The petitioner raised two grounds for relief in his amended petition for a writ of habeas corpus. The petitioner claimed that the respondent, Warden Brooks, has refused to credit his state sentence with the time he served on his five-year federal sentence, which was vacated in 1998. The petitioner also claimed that he is being illegally confined in a state prison facility pursuant to a twenty-year sentence for robbery because the State of Connecticut abandoned its jurisdiction over him on January 10, 1990, when he pled guilty in federal court. In its January 23, 2001 ruling, the Court denied the amended petition because the petitioner had not alleged that he had raised either of his two claims in a state habeas petition or other state proceeding prior to filing the petition in this action. Thus, the Court concluded that the petitioner had failed to exhaust his state court remedies with respect to both claims in the amended petition.

**\*2** Now, the petitioner contends that prior to filing the present petition, he filed a motion for modification of and/or to correct an illegal sentence in his underlying state criminal case, and filed a state habeas petition. The petitioner claims that the state court denied his motion for modification of his sentence in 1999, and that he appealed the denial of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2001 WL 1094964 (D.Conn.)
**(Cite as: 2001 WL 1094964 (D.Conn.))**

Page 2

his motion for modification. However, the record indicates that the appeal was withdrawn before it was finally decided. [FN1] Accordingly, to the extent that the petitioner raised one or both of the claims set forth in the present petition in his motion for modification of sentence, he has still not demonstrated that he exhausted those claims.

> FN1. In a letter attached to the petitioner's third motion for reconsideration, a court officer for the Hartford Superior Court indicates that the plaintiff appealed the rulings denying his motion for modification of his sentence, but the appeal was subsequently withdrawn.

The petitioner also alleges that he raised the same issues set forth in the instant petition in a state habeas petition. He claims that the state habeas petition has been pending for three years without a decision. Thus, the petitioner argues, the delay in his state habeas petition has rendered the state court exhaustion requirement futile.

The Supreme Court has cautioned that an exception to the exhaustion requirement is appropriate only where there is no opportunity to obtain redress in state court or where the state corrective procedure is so clearly deficient that any attempt to obtain relief is rendered futile. See *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). In determining whether the petitioner has been deprived of due process because of delay, courts consider the factors set forth in *Barker v. Wingo,* 407 U.S. 514 (1972). See, e.g., *Cody v. Henderson,* 936 F.2d 715, 717-18 (2d Cir.1991); *United States v. Mohawk,* 20 F.3d 1480, 1485 (9th Cir.1994). Those factors include the length of the delay, the reason for the delay, whether the petitioner asserted his rights, and whether the petitioner will suffer any prejudice as a result of the delay. See *Barker,* 407 U.S. at 530.

Further, "[in] determining whether a delay of a prisoner's appeal violates due process ... no one factor is dispositive and all are considered together with the relevant circumstances." *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990). In cases concerning delay of post-trial proceedings, the courts also consider the interests of federal-state comity. See, e.g., *Brooks v. Johnson,* 875 F.2d 30, 32 (2d Cir.1989).

The first factor that the Court must consider is the length of the delay. The docket sheet in the petitioner's state habeas case reveals that the petitioner filed his petition in March 1998. See *Channer v. Strange,* No. CV-98-0411200-S (Conn.Super.Ct. Mar. 27, 1998). The state habeas corpus docket sheet from June of this year also indicates that the petition is still pending. The petitioner initially filed this action in December 1999. [FN2] See also *Channer v. Warden,* No. CV980411200S, 2001 WL 950973, at *1 (Conn.Super.Ct. July 25, 2001) (referring to the petitioner's pending state habeas claims).

> FN2. The petitioner also filed a state habeas petition in 1995, which only raised issues of ineffective assistance of counsel, and which was denied. See *Channer v. Warden,* No. CV 911362S (Conn.Super.Ct. Feb. 8, 1996). Although the petitioner did not appeal that decision, he subsequently filed a petition for a new trial on bases other than those presented in the instant petition. The petition for a new trial was denied. See *Channer v. State,* No. CV 910503029S, (Conn.Super.Ct. Sept. 12, 1997), aff'd, 738 A.2d 202 (Conn.App.Ct.), cert. denied, 739 A.2d 1247 (Conn.1999). In addition, although the Court notes that the petitioner's prior state habeas petition and his motion for a new trial mentioned the State's Attorney's alleged failure to abide by his plea agreement, and his trial counsel's failure to ensure that agreement, they did not raise the issues presented in this federal petition concerning the state court's jurisdiction or the calculation of the petitioner's state sentence.

*3 The Second Circuit has held that a three and one-half year delay in a direct appeal does not violate due process. Accordingly, the three year delay in the petitioner's state habeas corpus action is insufficient to demonstrate a due process violation or to find that exhaustion should be excused. See *Ralls v. Manson,* 503 F.2d 491, 493-94 (2d Cir.1974) (three and one-half year delay in processing criminal appeal "not the equivalent of a complete absence of effective state appellate process"). But see, e.g., *Muwwakkil v. Hoke,* 968 F.2d 284, 285-86 (2d Cir.) (holding that thirteen year delay in appeal violated due process), cert. denied, 506 U.S. 1024 (1992); *Mathis v. Hood,* 937 F.2d 790 (2d Cir.1991) (six year delay of direct appeal excessive); *Diaz v. Henderson,* 905 F.2d 652 (2d Cir.1990) (seven year delay of direct appeal excessive).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2001 WL 1094964 (D.Conn.)
**(Cite as: 2001 WL 1094964 (D.Conn.))**

Page 3

The petitioner's efforts to expedite the state proceedings are also relevant to this futility analysis. See Osden v. Moore, 445 F.2d 806, 807 (1st Cir.1971) (petitioner repeatedly attempted to expedite court action by letters to court and counsel). In his first and second motions for reconsideration, the petitioner does not indicate that he has made any attempts to expedite the state habeas proceeding. In the petitioner's third motion for reconsideration, the petitioner states that in March 2001, he sent a letter to the Superior Court Judge in his habeas action concerning the delay in the proceedings, but the letter was returned to him with instructions to file a motion in the case. The petitioner also states that he sent an application for a writ of mandamus to the Connecticut Appellate Court. The Chief Clerk returned the application to the petitioner in March 2001, with a letter informing the petitioner that a writ of mandamus can only be obtained from the Superior Court. There is no evidence that the petitioner subsequently filed a motion in the state habeas case or a writ of mandamus in Superior Court, or that he has made any other additional efforts to expedite his state habeas petition.

The Court should also consider whether the petitioner will suffer any prejudice as a result of the delay in the state proceeding. In Cousart v. Hammock, 580 F.Supp. 259, 268-69 (E.D.N.Y.1984), aff'd, 745 F.2d 776 (2d Cir.1984), the court indicated that an impaired ability to defend at retrial because of lost witnesses or lost evidence demonstrated such prejudice. The petitioner here, however, alleges that the delay has caused him to suffer stress, which is insufficient.

Evaluating the factors set forth in Barker v. Wingo, the Court concludes that the petitioner in this case has not been denied due process because of the delay. A three-year delay in the petitioner's state habeas corpus action is not unreasonable, and, at this point, pursuit of the petition for a writ of habeas corpus in the state court is not futile. Accordingly, the petitioner is not excused from exhausting his state remedies before proceeding in federal court.

IV. Conclusion

*4 Accordingly, the Court concludes that the plaintiff fails to meet his burden of identifying any "manifest errors of law or fact" which would require reconsideration of the Court's January 23, 2001 decision. LoSacco, 822 F.Supp. at 876. The plaintiff's motions for reconsideration are granted. However, after careful consideration of the arguments raised in the motion, the Court affirms its January 23, 2001 ruling denying the amended petition for a writ of habeas corpus. The petitioner may file a federal habeas corpus petition after he has exhausted his state remedies, including any state habeas corpus relief available to him. [FN3]

> FN3. The Court recognizes that in some circumstances a petitioner must receive notice and an opportunity to be heard before a district court dismisses a habeas petition on procedural grounds. See Acosta v. Artuz, 221 F.3d 117 (2d Cir.2000). Here, the Court granted reconsideration and gave the petitioner the opportunity to present his arguments and evidence of exhaustion.
> The Court also concludes that this case does not involve a "mixed" habeas petition containing exhausted and unexhausted claims, which may require the Court to stay a portion of the case rather than dismiss it without prejudice. See Zarvela v. Artuz, 254 F.3d 374 (2d Cir.2001).

The Court also determines that the petition presents no question of substance for appellate review, and that the petitioner has failed to make a "substantial showing" of denial of a federal right. See Barefoot v. Estelle, 463 U.S. 880, 893 (1983); Rodriguez v. Scully, 905 F.2d 24 (2d Cir.1990). Thus, a certificate of appealability will not issue.

SO ORDERED.

2001 WL 1094964 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works