UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREYSTONE COMMUNITY REINVESTMENT ASSOCIATES, INC.<br>Plaintiff,<br>v.<br><br>BEREAN CAPITAL, INC.<br>Defendant. | : CIVIL ACTION NO.: 3:02-CV-1703(CFD)<br>:<br>:<br>:<br>:<br>:<br>: DECEMBER 11, 2006<br>: |

## JOINT TRIAL MEMORANDUM

1. **TRIAL COUNSEL**

   **Plaintiff:**

   Eliot B. Gersten, Esq., ct 05213
   email  EGersten@GCRLAW.net

   John J. Robacynski, Esq., ct 15636
   email  JRobacynski@GCRLAW.net

   Gersten, Clifford & Rome, LLP
   214 Main Street
   Hartford, Connecticut  06106
   Tel:   (860) 527-7044
   Fax:   (860) 527-4968

   **Defendant:**

   Thomas J. Finn, Esq., ct 20929
   TFinn@McCarter.com

   Paula Cruz Cedillo, Esq., ct 23485
   PCedillo@McCarter.com

   McCarter & English LLP
   185 Asylum Street
   Hartford, CT 06103
   Tel:   (860) 275-6700
   Fax:   (860) 724-3397

2. **JURISDICTION**

   The diversity jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.

3. **JURY/NON-JURY**

   The case is to be tried to the court.

1

4.  **NATURE OF CASE**

The eight count complaint against Berean alleges breach of Confidentiality Agreement; breach of agency agreement and placement agent agreement; breach of fiduciary duty; fraud; fraudulent concealment; intentional interference with business expectations; civil theft; and violation of the Connecticut Unfair Trade Practices Act. This case was consolidated with *Greystone Community Reinvestment Associates, Inc. v. First Union National Bank*, 3:00-CV-871(CFD). That case has settled.

The parties respectfully refer the Court to Sections 6, 7 and 8 below concerning respectively Plaintiff's Contentions and Defendant's Contentions as well as the facts and elements of the claims and defenses.

5.  **STIPULATIONS OF FACT AND LAW**

    a.  Stipulations of Facts

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following materials facts are undisputed:

    1.  Greystone is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

    2.  Berean is a Delaware Corporation with its principal place of business in Chicago, Illinois.

    3.  Berean and First Union executed a Confidentiality Agreement on or about September 19, 1996.

    4.  Information concerning the CRA Securitization was disclosed to First Union after the execution of the Confidentiality Agreement.

2

5. Greystone and Berean executed a Placement Agent Agreement on or about June 6, 1997.

6. The U.S. Comptroller of the Currency issued a favorable opinion regarding the CRA Securitization.

7. First Union secretly undertook a competing CRA Mortgage Securitization following confidential disclosures to First Union by Berean and Greystone.

8. First Union usurped the CRA securitization concept and publicly offered a CRA securitization with Bear Stearns & Co., Inc. in violation of the Confidentiality Agreement.

9. Greystone filed suit against First Union.

10. Berean filed an NASD arbitration against First Union.

b. Stipulations of Law

i. Plaintiff's claims and recoverable damages, if any, are governed by Connecticut law.

6. **PLAINTIFF'S CONTENTIONS**

Greystone developed a unique and confidential idea to market a CRA security and retained Berean to act as its agent and find a venture partner to pursue and promote the deal. As part of this undertaking, Berean introduced Greystone to the underwriters and mortgage bankers at First Union, but only after Berean negotiated an agreement with First Union to preserve the confidentiality of the Greystone product and avoid its misuse by First Union. The agreement failed to mention Greystone specifically but Berean assured Greystone that it was adequate to fully protect Greystone's idea.

3

Following execution of the agreement, Greystone, Berean and First Union worked together to develop a prospectus and related documents for the CRA securitization and in the course of doing so, confidential information passed to First Union. Greystone later learned that some of the same individuals working with them at First Union subsequently developed a competing CRA securitization with Bear Sterns. Greystone's deal was usurped so it filed suit against First Union for theft of idea. Berean declined to participate.

After several sessions supervised by Magistrate Judge Garfinkle, Greystone reached a handshake agreement with First Union to resolve the dispute by a payment of $450,000.00. Because Berean had independently threatened suit against First Union, without notice to Greystone – on the same grounds as Greystone's suit, First Union required a release from Berean. Berean refused and instead, without notice to Greystone, filed a NASD arbitration against First Union falsely claiming Berean developed the CRA securitization concept. First Union, thereafter, refused to settle the lawsuit and Berean refused to withdraw the arbitration.

During discovery, First Union disclosed that the confidentiality agreement was a noncircumvention agreement to protect Berean and not Greystone. Berean also allowed it to include provisions allowing First Union to pursue its own competing securitization. The NASD arbitration revealed that Berean secretly presented other clients to First Union despite representations to Greystone that the agreement was solely for Greystone's benefit. It also revealed that Berean failed to produce documents in response to subpoenas that disclosed Berean's self dealings. Berean ignored Greystone's requests to abandon the arbitration to allow a settlement between Greystone and First Union and continued it until conclusion; wherein the NASD arbitrators rejected Berean's claim. As a result, First Union reduced its settlement offer by the costs of arbitration. Greystone eventually settled for $250,000.00. Greystone claims that

Berean as responsible for protecting Greystone's idea of a CRA securitization from use or disclosure. The information was not protected and First Union realized $17,000,000.00 in fees and profits (the difference between the $411,000,000.00 sales price of the mortgages and the $394,000,000.00 offering) in addition to freeing up its capital to other uses. Bear Stearns used the securitization concept and closed on eight transactions utilizing the one with First Union as a template and generated $4,727,372.00 in fees. Additionally, Greystone experienced $3,125,114 in lost profits and fees on its planned CRA securitization, less $250,000 that it received in settlement from First Union for a total of $2,970,614.

7. **DEFENDANT'S CONTENTIONS**

This matter arises from Plaintiff's attempt to force Defendant to comply with Plaintiff's unfounded demands that Defendant relinquish its rights to pursue claims against First Union Capital Markets ("First Union"). Plaintiff had commenced litigation against First Union in connection with a failed securitization of a pool of Community Reinvestment Act ("CRA") mortgages by Plaintiff and Defendant which, as contemplated, would qualify as CRA loans to be marketed to financial institutions (the "CRA Securitization"). In 1996, in furtherance of the CRA Securitization, Defendant and First Union executed a confidentiality agreement whereby First Union was prohibited from directly or indirectly disclosing any of the confidential information it would learn in connection with the CRA Securitization investment opportunity and agreed to keep such information strictly confidential. Additionally, First Union agreed not to circumvent, interfere, inhibit, or impair Defendant's efforts to effectuate the CRA Securitization.

In reliance upon the confidentiality agreement, Defendant devoted a substantial amount of resources and services to effectuate the CRA Securitization, including expending considerable resources identifying and contacting numerous financial institutions for purchase commitments

for the CRA Securitization. However, despite its contractual obligations under the confidentiality agreement, First Union ultimately misappropriated the knowledge and information provided to it regarding the CRA Securitization. First Union improperly used this information for its own benefit and subsequently issued a competing CRA Securitization with Bear Stearns & Co., Inc. without Defendant's (or Plaintiff's) knowledge or consent, and frustrated Defendant's and Plaintiff's efforts to issue the CRA Securitization. As a result, Plaintiff filed suit against First Union.

Defendant cooperated with Plaintiff in its litigation against First Union, such as providing various information requested by Plaintiff. In or about December 2001 and in connection with a proposed settlement with First Union, Plaintiff demanded that Defendant provide a release of Defendant's rights against First Union. Yet, as Defendant had also expended a substantial amount of resources and services to effectuate the CRA Securitization, it was entitled to just compensation in exchange for the relinquishment of its legal rights against First Union (as well as consideration of discontinuing its NASD arbitration against First Union). However, Plaintiff refused to compensate Defendant for the requested release and Defendant did not comply with Plaintiff's unfounded demand. Defendant commenced its own NASD arbitration against First Union to hold First Union accountable for its conduct.

Almost immediately after Plaintiff' unfounded demand for a release from Defendant, and approximately two years after commencing its suit against First Union, Plaintiff then filed the instant action in an evident attempt to extort the release it had demanded from Defendant. Plaintiff alleges, <u>inter alia</u>, that Defendant improperly interfered with Plaintiff's settlement with First Union by refusing to provide the release and by commencing an NASD arbitration. Plaintiff also alleges that Defendant "stole" Plaintiff's securitization concept and that Defendant

withheld information during discovery, all of which are baseless contentions. Defendant believes that it has no liability to Plaintiff and submits that this action is frivolous.

8. **LEGAL ISSUES**

   **Plaintiff's Legal Issues:**

   Greystone contends that Berean breached their confidentiality agreement, agency agreement and placement agent agreement by not protecting Greystone's idea from use or disclosure by First Union, by not acting in Greystone's interests as principal and by using and disclosing Greystone's proprietary CRA securitization concept in a NASD arbitration against First Union in which it claimed the idea as its own. "[T]he key elements of a breach of contract action considered by the court are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Bouchard v. Sundberg, 80 Conn.App. 180, 189, 834 A.2d 744 (2003).

   Directly related to this is Greystone's claim that Berean breached its fiduciary duty to Greystone by withholding documents and information from Greystone, by putting Berean's interests first, by not providing a release for Greystone to settle with First Union and by filing a NASD arbitration claiming Berean developed the CRA securitization concept. Under Connecticut law, "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Cadle Co. v. D'Addario, 268 Conn. 441, 455, 844 A.2d 836 (2004). Berean knew that it intended to present other clients to First Union under Greystone's confidentiality agreement and hid this from Greystone when it negotiated the agreement. Berean then presented other clients to First Union and failed to produce the documentation while under subpoena. Berean also knew that Greystone was

7

attempting to settle its suit with First Union and Berean refused to provide a release and instead filed a NASD arbitration against First Union claiming the CRA securitization as its own. "In the seminal cases in which this court has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another . . . In the cases in which this court has, as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." Biller Associates v. Peterken, 269 Conn. 716, 723-24, 849 A.2d 847 (2004). The Connecticut Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Alaimo v. Royer, 188 Conn. 36, 41, 448 A.2d 207 (1982). "Consequently, the question of whether a fiduciary duty exists . . . is a question of fact to be determined by the test set forth in Alaimo [ v. Royer ] . . . The existence of a fiduciary duty is largely a factual determination and the extent of the duty and the resulting obligations may vary according to the nature of the relationship: the obligations do not arise as a result of labeling, but rather by analysis of each case." Seymour Ambulance v. Marcucio, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 05 4002561 (November 23, 2005, Fischer, J.); *see also* Hoffnagle v. Henderson, Superior Court, judicial district of Hartford, Docket No. CV 02 0813972 (April 17, 2003, Beach J.). Accordingly, "[w]hether such a confidential relationship exists is a factual question for the trial court." Albuquerque v. Albuquerque, 42 Conn.App. 284, 287, 679 A.2d 962 (1996).

Greystone also alleges fraud against Berean in that Berean was to negotiate a confidentiality agreement to protect Greystone and not an agreement that was a noncircumvention agreement intended to protect Berean. Berean hid this from Greystone just as it hid other clients it presented to First Union under this purported confidentiality agreement. "Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action . . . The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." Carr v. Fleet Bank, 73 Conn.App. 593, 595, 812 A.2d 14 (2002)

Greystone further alleges fraudulent concealment against Berean; the elements of which include: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) the defendant's intentional concealment of these facts from the plaintiff; and (3) the defendant's concealment of the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on his cause of action. Bartone v. Robert L. Day Co., 232 Conn. 527, 533, 656 A.2d 221 (1995). Despite a subpoena to produce its files, Berean hid the letter to First Union in which it presented other clients to First Union under the confidentiality agreement that was intended to protect only Greystone. Berean did so to hide its double dealings. Greystone discovered this concealment when it obtained a copy of the NASD arbitration claim that had this letter as an attachment.

Greystone claims that Berean interfered with its settlement with First Union by failing to provide its principal with a release and by instead filing a NASD arbitration against First Union claiming Greystone's idea and confidentiality agreement as its own. This derailed Greystone's

settlement. "It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 27, 761 A.2d 1268 (2000);

In the NASD arbitration, Berean claimed Greystone's idea for the CRA securitization as its own. By doing so, Berean committed an act of larceny by steeling Greystone's idea and cause of action as its own. C.G.G. § 52-564 provides that: "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages. Greystone's settlement with First Union was reduced by the cost or arbitration with Berean.

Lastly, Greystone claims that Berean violated the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110(b)(a), by double dealing, placing its own interests first, by not protecting Greystone's idea, by hiding documents and information; by refusing to provide a release and by filing the NASD arbitration. CUTPA provides that: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110a(4) defines "trade" and "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and other article, commodity, or thing of value in this state ." In determining whether certain acts constitute a violation of CUTPA, courts "have adopted certain criteria set out in the cigarette rule by the federal trade commission . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common

10

law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ] ." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212 (1995). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one criteria or because to a lesser extent it meets all three . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy." Associated Investment Co. Ltd. Partnership v. Williams Associates IV, 230 Conn. 148, 156, 645 A.2d 505 (1994). Berean acted despicably and the facts will bear out that it violated CUTPA in the process.

**Defendant's Legal Issues:**

Plaintiff asserted various causes of action against Defendant, including breach of confidentiality and agent placement agreements, breach of fiduciary duty, fraud and fraudulent concealment, tortious interference with contractual relations, civil theft, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). However, Plaintiff cannot sustain any cause of action against Defendant.

Plaintiff alleges that Defendant breached the Confidentiality Agreement, dated September 19, 1996 ("Confidentiality Agreement") by failing to protect Plaintiff's confidential information regarding the CRA Securitization. However, the Confidentiality Agreement imposed an affirmative obligation upon First Union, not Defendant, to refrain from using or disclosing this information. A plaintiff seeking damages for breach of contract must establish that the damages were proximately caused by and are "directly traceable" to the breach. See LNC Inv. V. First

11

Fidelity Bank, 173 F.3d 454, 464-65 (2d Cir. 1999) (citations omitted). Failure to do so is fatal to a plaintiff's claim for breach of contract. See id. at 465 (citation omitted).

Plaintiff claims that Defendant breached the Placement Agent Agreement, dated June 6, 1997 ("Placement Agent Agreement"). The Placement Agent Agreement does not support such a claim given that an express condition precedent to the Placement Agent Agreement was never fulfilled. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance under a contract. If a condition precedent is not fulfilled the contract is not enforceable." W. Alliance Ins. Co. v. Wells Fargo Alarm Sys., Inc., 965 F. Supp. 271, 278 (D. Conn. 1997) (citing Luther v. Rosen, 164 Conn. 45, 47-48, 316 A.2d 757 (1972)). Additionally, the terms of an agency relationship may be modified by contract and the existence and extent of an agent's duties are properly determined by the terms of the agreement between the parties. See Village On Canon v. Bankers Trust Co., 920 F. Supp. 520, 532-33 (S.D.N.Y. 1996); Greenwood v. Koven, 880 F. Supp. 186, 194 (S.D.N.Y. 1995). The Placement Agent Agreement, drafted by Plaintiff, modified the parties' relationship and cannot serve a basis for imposing liability.

With respect to the claim of breach of fiduciary duty, Defendant is not liable to Plaintiff on this basis because, quite simply, no such duty was owed to Plaintiff. There was no fiduciary relationship between Plaintiff and Defendant. Moreover, Plaintiff cannot establish that Defendant's conduct proximately caused Plaintiff's alleged damages. Causation is an essential element of a claim for breach of fiduciary duty and a plaintiff must establish that the defendant's conduct proximately caused the injury. See LNC Inv., 173 F.3d at 465.

Likewise, Defendant cannot be held liable for tortious interference with business relations because Plaintiff had no business relationship with First Union in which to interfere. Plaintiff

cannot establish, as it must in order to prevail on its claim, that Defendant, knowing of Plaintiff's business relationship with a third party, tortiously interfered with that relationship. See Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998) (quotation omitted); Dreamcatcher Software Dev. LLC v. Pop Warner Little Scholars Inc., 248 F. Supp. 2d 276, 286-87 (D. Conn. 2004). Additionally, tortious interference must be established by demonstrating that the defendant was "guilty of fraud, misrepresentation, intimidation, molestation, or that the defendant acted maliciously." Jarrow Formulas, Inc. v. Int'l Nutrition Co., 175 F. Supp. 2d 296, 314 (D. Conn. 2001). Plaintiff cannot establish that Defendant's lawful entitlement to pursue its legal claims against First Union in arbitration were dishonest, improper, or malicious.

In support of its causes of action for fraud and fraudulent concealment, Plaintiff claims that Defendant made false representations regarding the Confidentiality Agreement and falsely concealed from Plaintiff that the Confidentiality Agreement was a noncircumvent agreement intended to protect Defendant and not Plaintiff. To adequately state a cause of action for fraud and fraudulent misrepresentation, a plaintiff must allege that "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." Weisman v. Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995); see, e.g., Statewide Grievance Comm. v. Egbarin, 61 Conn. App. 445, 454, 767 A.2d 732 (2001). Plaintiff received a copy of the Confidentiality Agreement and asserted no objection to it. Plaintiff is a sophisticated party that fully understood the importance and implications of the Confidentiality Agreement and, had Plaintiff believed that it either possessed confidential information or that it needed to protect this information, it should have negotiated such an agreement.

13

Plaintiff cannot prevail on its cause of action for civil theft, whereby it claims that Defendant stole Plaintiff's property by pursuing the arbitration against First Union. Civil theft pursuant to section 52-564 of the Connecticut General Statutes is synonymous with larceny in Connecticut's penal code. See Hi-Ho Tower, Inc. v Com-Tronics, Inc., 255 Conn. 20, 44, 761 A.2d 1268 (2000). In pursuing its claims against First Union, which Defendant has a legal right to do, it did not wrongfully make use of, or otherwise permanently deprive Greystone of any property. See Gerardo v. Laraia, No. CVN98091696, 2001 WL 283019, at *10 (Conn. Super. Ct. Feb. 3, 2001).

Plaintiff maintains that Defendant's conduct in pursuing the arbitration against First Union, not providing Plaintiff a release necessary to reach a settlement between Plaintiff and First Union, and failing to produce a document Defendant had in its possession relevant to Plaintiff's litigation against First Union constitutes a violation of CUTPA. However, there is no viable claim under CUTPA because as a matter of law, when the practice complained of was not performed in the defendant's primary trade or business, there can be no CUTPA claim. See, e.g., Cornerstone Realty, Inc. v. Dresser Rand Co., 993 F. Supp. 107, 113 (D. Conn. 1998); McCann Real Equities Series XXII LLC v. David McDermott Chevrolet, Inc., 93 Conn. App. 486, 522-23, 890 A.2d 140 (2006). Even if CUTPA were to apply to Defendant's conduct, which it does not, Defendant's conduct in pursuing its legal rights against First Union through arbitration cannot reasonably be characterized as immoral, unethical, illegal, oppressive, or unscrupulous within the meaning of CUTPA. See Boulevard Assoc. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1038 (2d Cir. 1995) (quotation omitted) (setting forth unfair conduct under the cigarette rule). As such, Plaintiff cannot prevail on its CUTPA claim.

9. **VOIR DIRE QUESTIONS**

    Not applicable.

10. **LIST OF WITNESSES**

    **Plaintiff's Proposed Witnesses – See Appendix I.**

    **Defendant's List of Proposed Witnesses – See Appendix II.**

    The parties reserve the right to designate additional witnesses.

11. **EXHIBITS**

    **The parties have stipulated to the admissibility of all exhibits except as noted.**

    **Plaintiff's Exhibits – See Appendix III.**

    **Defendant's Exhibit List – See Appendix IV.**

    The parties reserve the right to designate additional exhibits.

12. **DEPOSITION TESTIMONY**

    The parties reserve the right to designate transcripts for witnesses not available to voluntarily testify. Particularly, the parties reserve the right to offer the deposition testimony, or any relevant portion thereof, of the following individuals in accordance with Rule 32 of the Federal Rules of Civil Procedure:

    Howard B. Brown, Jr., depositions taken on February 14, 2001, February 22, 2001, October 18, 2001, October 19, 2001, and December 3, 2004;

    S. Trezevant Moore, Jr., depositions taken on January 29, 2001, and March 21, 2001;

    David D. Irving, deposition taken on February 13, 2001;

    Daniel J. Homick, deposition taken on February 12, 2001;

    Dale P. Westoff, deposition taken on July 10, 2001;

    Thomas F. Marano, deposition taken on July 10, 2001;

Charles A. Ferraro, deposition taken on October 10, 2001;

Kenneth Wesley Malone Jones, Sr., deposition taken on October 24, 2001;

Kathleen M. Burns, deposition taken on October 29, 2001 and

Dudley Brown, deposition taken on March 28, 2003.

13. **REQUESTS FOR JURY INSTRUCTIONS**

Not applicable.

14. **ANTICIPATED EVIDENTIARY PROBLEMS**

None at this time.

15. **PROPOSED FINDINGS AND CONCLUSIONS**

Not Applicable.

16. **TRIAL TIME**

The parties anticipate that trial will require 5 trial days.

17. **FURTHER PROCEEDINGS**

A Final Pre-Trial Conference has not yet been scheduled.

The parties reserve the right to file briefs with respect to issues which might arise during the course of this trial.

18. **ELECTION FOR TRIAL BY MAGISTRATE**

The parties do not agree to a trial by a Magistrate Judge.

This document is being e-filed with the consent of plaintiff's counsel.

| | |
|---|---|
| Plaintiff,<br>Greystone Community Reinvestment<br>Associates, Inc.<br>By Its Attorney,<br><br>_____<br>Eliot B. Gersten, Esq., ct 05213<br>John T. Robacynski, Esq., ct 15636<br>Gersten, Clifford & Rome, LLP<br>214 Main Street<br>Hartford, CT 06106 | Defendant,<br>Berean Capital, Inc.<br>By Its Attorneys,<br><br>_____<br>Thomas J. Finn, Esq., ct20929<br>Paula Cruz Cedillo, Esq. ct23485<br>McCarter & English LLP<br>City Place I<br>185 Asylum Street<br>Hartford, CT 06103 |