# EXHIBIT "H"

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

Veritas-Scalable Inv. Products Fund, LLC v. FB
Foods, Inc.
D.Conn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
VERITAS-SCALABLE INVESTMENT
PRODUCTS FUND, LLC
v.
FB FOODS, INC., f/k/a Funny Bagel Food
Company, Inc.
**No. 3:04 CV 1199 JBA.**

July 26, 2006.

J. Christopher Rooney, Carmody & Torrance, New
Haven, CT, Leigh R. Isaacs, Patti E. Evans, Isaacs &
Evans, LLP, New York, NY, Kimberly J. Tibbetts,
Carmody & Torrance, CT, for Plaintiff.
Brenda M. Hamilton, Brown Raysman Millstein
Felder & Steiner-Htfd, Hartford, CT, Jennifer
Olmedo-Rodriguez, Mark J. Neuberger, Richard A.
Morgan, Buchanan Ingersoll PC-FL, Miami, FL,
Kelley Franco Throop, Maciej A. Piatkowski, Robert
C.E. Laney, Ryan, Ryan, Johnson & Deluca,
Stamford, CT, for Defendant.
Robert C.E. Laney, Ryan, Ryan, Johnson & Deluca,
Stamford, CT, for Counter Claimant.

*RULING ON DEFENDANT'S MOTION TO AMEND
ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM*
JOAN GLAZER MARGOLIS, United States
Magistrate Judge.
**\*1** On July 19, 2004, plaintiff Veritas-Scalable
Investment Products Fund, LLC [" Veritas or
plaintiff" ] commenced this action to recover on two
unpaid promissory notes, each in the amount of
$500,000, which Complaint was superseded by an
Amended Complaint filed on November 12, 2004.
(Dkt.# 33). On September 7, 2005, defendant FB
Foods, Inc. [" FBF" or " defendant" ] filed its
Answer to plaintiff's Amended Complaint and
Counterclaim (for violation of Florida Unfair Trade
Practices Act, FLA. STAT. § 501.204) (Dkt.# 76).
Five months later, on February 6, 2006, defendant
filed its Motion for Leave to Amend its Answer,
Affirmative Defenses and Counterclaim (Dkt.#
93),FN1 in which seeks to include two additional

Counterclaims, for fraudulent misrepresentation
(Count II), and fraud in the inducement (Count III).
(Dkt. # 93, Exh. A). Plaintiff filed its objection and
brief in opposition on March 31, 2006. (Dkt .#
110).FN2 On December 22, 2004, United States
District Judge Janet Bond Arterton referred this case
to this Magistrate Judge for purposes of supervising
discovery. (Dkts. # # 42, 45 & 46). On June 8, 2006,
Judge Arterton referred this Motion to Amend
Answer to this Magistrate Judge. (Dkt.# 132).

> FN1. Defendant erroneously docketed the
> Amended Answer and Counterclaim that it
> seeks leave to file, which error has since
> been corrected on the docket sheet. (Dkt. #
> 94; see Dkt. # 129, at 1 n. 2; Dkt. # 93, Exh.
> A).
> For the purpose of brevity, the Court will
> refer to plaintiff/counterclaim-defendant
> Veritas as plaintiff or Veritas, and to
> defendant/counterclaim-plaintiff FBF as
> defendant or FBF.

> FN2. Attached to plaintiff's brief in
> opposition is an affidavit of Leigh R. Issacs,
> sworn to March 28, 2006 [" Issacs Afft" ],
> to which the following five exhibits are
> attached: copy of Complaint, filed on June
> 10, 2004 in *Aldasoro, LLC v. FB Foods Inc.,*
> Civ. No. 04-12839 (11th Fla.Cir.Ct.2004) ["
> *Aldasoro"* ] (Exh. A); copy of Answer,
> Affirmative Defenses and Third-Party
> Complaint, filed on August 17, 2004 in
> *Aldasoro* (Exh. B); copy of Answer,
> Affirmative Defenses and Counterclaim,
> filed in *McMahan Sec. Co. L .P. v. FB
> Foods, Inc.,* Civ. No. 804CV1791-T24-
> TGW (M.D.Fla.2004) [" *McMahan"* ]
> (Exh. C); copy of Answer and Affirmative
> Defenses to Amended Complaint and
> Counterclaim, filed on December 14, 2005
> in *McMahan* (Exh. D); and copy of excerpts
> of the deposition transcript of Michael
> Shillan, taken on August 31, 2005 in
> *McMahan* (Exh. E).

For the reasons stated below, defendant's Motion for
Leave to Amend its Answer, Affirmative Defenses
and Counterclaim (Dkt. # 93) is *granted in part and
denied in part.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2006 WL 2520262 (D.Conn.)
**(Cite as: Slip Copy)**

*I. FACTUAL AND PROCEDURAL BACKGROUND*

As stated above, on July 19, 2004, plaintiff commenced this action against defendant (Dkt.# 1), which Complaint was superseded by an Amended Complaint (Dkt.# 33), filed on November 12, 2004. Ten days later, defendant filed its Motion to Dismiss for lack of personal jurisdiction (see Dkt. # 34, *see also* Dkts. # # 9-12, 14-15, 17), which motion was denied by Judge Arterton on August 11, 2005. (Dkt. # 70; *see also* Dkts. # # 47-48, 51-52).[FN3]

> FN3. Judge Arterton denied defendant's Motion to Dismiss on grounds that defendant is subject to specific jurisdiction by the receipt of a loan from a company located in Connecticut, through a Connecticut bank, and defendant was subject to general jurisdiction resulting from its wide-ranging contacts within the States. (Dkt.# 70).
> While defendant's Motion to Dismiss was pending, plaintiff filed a Motion for Summary Judgment, which was later denied for failure to request a pre-filing conference. (Dkts.53-66).
> Defendant objected to plaintiff's Motion for Summary Judgment, *inter alia,* on grounds that its Motion to Dismiss was still pending, it had not yet filed its Answer, and it required discovery to sustain its alter ego theory. (Dkt. # 60, at 10-12).

On September 7, 2005, defendant filed its Answer, Affirmative Defenses and Counterclaim to plaintiff's Amended Complaint, in which defendant alleges that plaintiff, acting as the alter ego of McMahan Securities Co., L.P. [ " MSC" ], violated the Florida Unfair Trade Practices Act, FLA. STAT. § 501.204. (Dkt. # 76). The parties then proceeded with discovery, which ended on December 20, 2005. (Dkts.78, 86-88 & 90).

On February 6, 2006, defendant filed the pending Motion for Leave to Amend in which defendant contends that " [p]ursuant to recent discovery in both this litigation and the litigation pending in the Middle District of Florida, [defendant] uncovered information relating to claims against MSC," necessitating the assertion of two additional counterclaims against plaintiff, namely, fraudulent misrepresentation and fraud in the inducement. (Dkt.

# 93, at 3 ¶¶ 12-13).[FN4]

> FN4. According to defendant, defendant and MSC are involved in the *McMahan* litigation pending in the United States District Court for the Middle District of Florida, directly related to the claims asserted by plaintiff in this lawsuit. (See Dkt. # 93, at ¶ 11). Plaintiff contends, however, that the federal action pending in Florida, commenced by MSC against FBF, is not directly related to the claims in this lawsuit. (Dkt. # 110, at 6-7 & n. 2). Rather, in that lawsuit, MSC seeks a declaratory judgment that it is not liable to FBF and asserts a claim for breach of contract relating to FBF's default in repaying $1.75 million in Bridge Financing. (Dkt. # 110, at 5-6 & Isaacs Aff't, Exh. C)(the Bridge Financing is defined as certain loans made in late November 2003 in the amount of $1.75 million which includes the $1,000,000 loaned by Veritas). (See Dkt. # 110, at 8). FBF's Counterclaim in that case is similar to the claims made by FBF in this matter, namely, that MSC (or in this case, its alleged alter ego, Veritas), made continuing promises and assurances that it would secure financing for FBF and MSC misrepresented to FBF that it had commitments from certain private investors who would inject substantial capital into FBF. (Dkt. # 110, at 6 & Isaacs Aff't, Exh. C, at 5-6). Additionally, in that case, FBF counterclaims for anticipatory repudiation, breach of contract, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, constructive fraud and fraud in the inducement. (Dkt. # 110, at 6-7 & Isaacs Aff't, Exh. D).

Plaintiff objects to defendant's Motion on grounds that defendant unduly delayed in filing this motion, and as a result of such delay, plaintiff will be prejudiced as discovery has been completed and plaintiff has already filed its Motion for Summary Judgment. (Dkt. # 110, at 1-2, 12-14). Moreover, according to plaintiff, defendant's amendments would be futile because the identical claims are being litigated in *McMahan Sec. Co. L.P. v. FB Foods, Inc.,* Civ. No. 804CV1791-T24-TGW (M.D.Fla.2004) [ " *McMahan* " ], pending in the United States District Court for the Middle District of Florida, and are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

therefore barred by the "first filed" rule. (Id. at 2, 5-7, 15-18). Additionally, plaintiff contends that the proposed addition of defendant's claims for fraudulent misrepresentation and fraud in the inducement are predicated solely on the actions of MSC and made applicable to Veritas under FBF's alter ego theory and these counterclaims were originally pled twenty months ago in *Aldasoro, LLC v. FB Foods Inc.,* Civ. No. 04-12839 (11th Fla.Cir.Ct.2004) ["*Aldasoro*"], an action brought in Florida state court by Aldasoro, LLC against FBF for failure to repay $500,000 of the Bridge Financing. (Dkt. # 110, at 5-9, & Isaacs Aff't, Exh. A).[FN5] Plaintiff also objects to defendant's proposed Amended Answer on grounds that such amendments excise defendant's admissions in an effort to avoid summary judgment. (Dkt. # 110, at 9-10, 14-15).

> FN5. On August 17, 2004, FBF answered the *Aldasoro* Complaint and commenced a Third-Party Action against MSC in which Third-Party Complaint FBF alleged that MSC made fraudulent misrepresentations to FBF causing FBF to default on its obligations under the Promissory Note. (Dkt. # 110, at 5-6 & Isaacs Aff't, Exh. B).

## II. DISCUSSION

*2 Federal Rule of Civil Procedure 15(a) reads:
A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

"The Supreme Court has emphasized that amendment should normally be permitted and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." *Independence Ins. Serv. Corp. v. Hartford Fin. Servs. Group, Inc.,* 2005 WL 1038991, at *4 (D.Conn. May 3, 2005)(internal quotation & additional citation omitted). Although it is "well established that leave to amend ... is liberally granted," the granting of a motion to amend remains within the sound discretion of the district court. *Concerned Citizens of Belle Haven v. Belle Haven Club,* 2002 WL 32124959, at

*3 (D.Conn. Oct. 25, 2002); *Messier v. Southbury Training School,* 1999 WL 20907, at *3 (D.Conn. Jan. 5, 1999) (citations omitted). The court's "exercise [of discretion] depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of [the] amendment...." *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998), *citing Foman v. Davis,* 371 U.S. 178, 182 (1962).

### A. UNDUE DELAY

Plaintiff filed his initial Complaint two years ago, on July 19, 2004 (Dkt. # 1), in response to which defendant sought two extensions of time to file its Answer before filing its Motion to Dismiss for lack of subject matter and personal jurisdiction on September 27, 2004, which was denied without prejudice to renew for failure to comply with the Court's pre-filing requirement. (Dkts. # # 5-6, 9-15, 17). Thereafter, complying with the deadlines set in Judge Arterton's November 10, 2004 Scheduling Order(Dkt.# 30, ¶¶ 1-2),[FN6] plaintiff filed its Amended Complaint on November 12, 2004 and defendant filed its Motion to Dismiss on November 22, 2004. (Dkts.# # 33-34). Five months later, plaintiff filed its Motion for Summary Judgment, which was denied without prejudice to renew for failure to comply with the pre-filing requirements. (See Dkts. # # 53-56 & 66).[FN7] Defendant's Motion to Dismiss was denied on August 11, 2005 (Dkt.# 70), and defendant filed its Answer and Counterclaim on September 7, 2005 (Dkt.# 76). Fourteen days later, Judge Arterton ordered discovery to close on November 28, 2005; defendant sought an extension of this discovery deadline, which was granted in part by this Magistrate Judge, ordering discovery to end on December 20, 2005. (Dkts. 78, 88-90).

> FN6. Judge Arterton also ordered personal jurisdiction discovery to close on January 22, 2005, which deadline was extended to March 18, 2005 by this Magistrate Judge. (Dkt. # 30, ¶ 3; Dkts.47-48).
> According to plaintiff, "[b]ecause [defendant's] motion failed to specify why the court lacked jurisdiction over FBF, the Court directed plaintiff to file an Amended Complaint alleging as specifically as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

possible why the Court had jurisdiction over FBF...." (Dkt. # 110, at 4).

FN7. Plaintiff's Motion for Summary Judgment was fully briefed before such motion was denied without prejudice to renew for failure to schedule a pre-filing conference. (See Dkts.53-58, 60-66).

**\*3** Approximately six weeks after the close of discovery, defendant filed the pending Motion to Amend its Answer, Affirmative Defenses and Counterclaim. FN8 (Dkt.# 93). Two days later, plaintiff filed its now pending Motion for Summary Judgment originally filed on April 22, 2005. (Dkts.96-101), FN9 which also has been referred to this Magistrate Judge. (Dkt.# 109).

FN8. On that same day, defendant also filed two discovery motions. (Dkts.# # 95, 102). On April 25, 2006, this Magistrate Judge granted in part and denied in part defendant's Motion to Compel and denied its Motion for Sanctions. (Dkt.# 124).

FN9. Plaintiff sought to " restore the summary judgment [motion filed on April 22, 2005,] to the active docket in accordance with" Judge Arterton's September 21, 2005 Scheduling Order (see Dkt. # 78), " but was unable to do so." (Dkt. # 110, at 5).

Plaintiff contends that defendant's claims for fraudulent misrepresentation and fraud in the inducement are predicated on the actions of MSC and made applicable to plaintiff under defendant's alter ego theory which was first enunciated on May 31, 2005 when defendant filed its opposition to plaintiff's motion for summary judgment, then reiterated in its Answer, filed September 7, 2005, and pled twenty months ago, *verbatim* in the *Aldasoro* Third-Party Complaint on August 17, 2004. (Dkt. # 110, at 24-25; see Dkt. # 60; Dkt. # 76, at 6, ¶ 5 & at 8, ¶ 19; Issacs Aff't, ¶ 3 & Exh. B, ¶¶ 22-24). The Second Circuit has " routinely excused delays of more than two years," *Concerned Citizens,* 2002 WL 32124959, at \*5 (citation omitted), and in light of the number of extensions and the parties' history of failing to comply with Judge Arterton's pre-filing requirements so as to result in a substantial delay of this litigation, defendant's delay in seeking leave to amend its answer and counterclaims, alone, is not grounds for denying its motion. However, although " [m]ere

delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," the " longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (citations omitted).

### B. FUTILITY OF AMENDMENT

As stated above, the propriety of granting a motion to amend remains within the sound discretion of the district court and the futility of the amendment is a valid reason to deny leave to amend. *Electronics Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.,* 129 F.3d 240, 246 (2d Cir.1997) (citation omitted). An amendment is futile if it would not survive a motion to dismiss, pursuant to Rule 12(b)(6). *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) (citation omitted)(failure to state a claim upon which relief can be granted renders a proposed amendment futile). This Court must read defendant's proposed amendments " generously" and draw all reasonable inferences in favor of the pleading party. *In re Everfresh Beverages, Inc.,* 238 B.R. 558, 571 (Bankr.S.D.N.Y.1999)(multiple citations omitted). " The issue is not whether [defendant] will ultimately prevail but whether [defendant] is entitled to offer evidence to support [its] claims." *Id.* (citation omitted).

Plaintiff contends that defendant's new counterclaims " would necessarily be dismissed because the identical claims sought to be alleged here are being litigated in the *[McMahan* lawsuit pending in the Middle District of Florida] ... [and] the proposed amendments would have to be dismissed under Fed.R.Civ.P. 12(b)(6) and 9(b)." (Dkt. # 110, at 15-16).FN10

FN10. Defendant's claims for fraudulent misrepresentation and fraud in the inducement were, " through the original complaint," filed in the Middle District of Florida " eighteen months ago," and " a result of the identical counterclaims filed on December 14, 2005." (Dkt. # 110, at 17).

### 1. FIRST-FILED RULE

**\*4** As plaintiff correctly notes,FN11 the Second Circuit has recognized and followed the " first to file rule,"

Slip Copy, 2006 WL 2520262 (D.Conn.)

(Cite as: Slip Copy)

which rule " embodies considerations of judicial administration and conservation of resources." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 80 (2d Cir.1989) (citations omitted); *see Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986).* In the absence of circumstances evidencing a substantial inconvenience to the party litigating this issue in another pending lawsuit,FN12 trial courts follow the strong " presumption in favor of allowing the controversy to be adjudicated in the forum where it was first filed." FN13 *First City Nat'l Bank & Trust Co.,* 878 F.2d at 80. Specifically, " [w]here lawsuits concerning the same parties and issues are pending in two federal districts, the filed-filed rule of the Second Circuit generally affords priority to the first-filed suit...." *Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 (S.D.N.Y .1995)(multiple citations omitted). A party seeking to deviate from the first-filed rule " bears the burden of demonstrating that sufficient circumstances exist to justify an exception to the rule," FN14 and the trial court has the discretion to determine whether such deviation is warranted. *Aaron v. Mattikow,* 225 F.R.D. 407, 415 (E.D.N.Y.2004)(multiple citations omitted). " Case law indicates [, however,] that [it is] the court in which the first-filed case was brought [that] decides the question of whether ... the first-filed rule, or alternatively, an exception to the first-filed rule, applies." *Ontel Prods., Inc.,* 899 F.Supp. at 1150, n. 9 (multiple citations omitted).FN15 Thus, the District of Connecticut is not the forum for this issue to be decided. FN16

FN11. Although plaintiff also argues that " [c]ompelling FBF to adjudicate all its claims with MSC in the Florida court is consistent with the rule of compulsory counterclaims in the Second Circuit," (Dkt. # 110, at 17-18), plaintiff does not contend that defendant's amendments are compulsory counterclaims nor is Rule 13(a), which is " directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint," applicable here. *Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir.1991) (citation omitted).

FN12. To determine whether the balance of convenience warrants a departure from the first-filed rule, the trial court must apply the same factors as in deciding whether transfer

is appropriate under 28 U.S.C. § 1404(a). *Pharmaceutical Res., Inc. v. Alpharma USPD Inc.,* 2002 WL 987299, at *4 (S.D.N.Y. May 13, 2002)(multiple citations omitted). The following factors are considered, though no single factor is determinative:

(1) convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances.

Id. at 4-5 (citations omitted).

FN13. The claim for fraudulent inducement that defendant seeks to add to this pending litigation has been alleged *verbatim* in its Answer and Affirmative Defenses to Amended Complaint and Counterclaim, filed two months prior to this pending motion, on December 14, 2005, in *McMahan* action in the Middle District of Florida. (Compare Issacs Aff't, Exh. D, at 25-28, ¶¶ 73-88, 89-103, 104-18, 119-33 with Dkt. # 93, Exh. A, ¶¶ 68-83). Additionally, defendant's claim for fraudulent misrepresentation that defendant seeks to add to this pending litigation has been alleged in its Third-Party Complaint, filed in the *Aldasoro* lawsuit and in the *McMahan* action in Middle District of Florida action. (See Dkt. # 93, Exh. A, ¶ 57; Issacs Aff't, Exh. B, ¶¶ 22-27; Exh. D, ¶¶ 95-96).

The only difference between the allegations in *McMahan* suit in the Middle District of Florida action and this action is that defendant's claims in this case are premised with allegations that Veritas, the plaintiff in this case, acts " merely" as the alter ego of MSC, the plaintiff in that case. (Compare Dkt. # 93, Exh. A with Issacs Aff't, Exh. D).

FN14. " There are exceptions to [the first-filed] rule[, neither of which are at issue in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 6

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

this case]; one exception exists where the first-filed suit constitutes an ' improper anticipatory filing,' or one made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district (or state court)." *Ontel Prods., Inc.,* 899 F.Supp. at 1150 (internal quotations & multiple citations omitted).

FN15. Although it is not mandatory to follow the " normal chronology" of having the " court of first impression ... [enjoin] the second court," *Adam,* 950 F.2d at 93, the Southern District of New York has " laid down a bright-line rule for situations such as this: The court before which the first-filed action was brought determines which forum will hear the case." *Schnabel v. Ramsey Quantitative Sys., Inc.,* 322 F.Supp.2d 505, 510-11 (S.D.N.Y.2004)(multiple citations and internal quotations omitted); *see also Dictaphone Corp. v. Gagnier,* 2006 WL 726675, at *5, n. 10 (D.Conn. March 22, 2006)(reflecting agreement with the Southern District's bright-line rule, that " the first court has jurisdiction to enjoin the prosecution of the second action ...." )(multiple citations omitted); *see Mednet, MPC Corp. v. Spectera, Inc.,* 1997 WL 205764, at *2 (D.Conn. March 11, 1997) (same) (citation omitted).

FN16. As stated in note 13 *supra,* the claims plaintiff contends are duplicative were asserted in FBF's Answer and Affirmative Defenses to Amended Complaint and Counterclaim filed on December 14, 2005 in *McMahan* action in the Middle District of Florida. (See Dkt. # 110, Isaacs Aff't, Exh. D). The *McMahan* lawsuit arose out of the business relationship between MSC and FBF, a part of which resulted in the execution of two promissory notes in favor of Veritas in this action and a promissory note in favor of Aldasoro in the *Aldasoro* action pending in the Florida state court. The *McMahan* action and this pending action were initiated by MSC and its alleged alter ego, respectively.

The deciding court must bear in mind that the party seeking a deviation from the first-filed rule must demonstrate more than " a

rough resemblance between the two suits," as such resemblance does not warrant the dismissal of the second suit. *Aaron,* 225 F.R.D. at 415 (internal quotations & citations omitted). Specifically, the court must " carefully consider whether in fact the suits are duplicative." *Alden Corp. v. Eazypower Corp.,* 294 F.Supp.2d 233, 235 (D.Conn.2003) (citation omitted). Accordingly, the deciding court " must be careful ... not to be swayed by a rough resemblance between the two suits without assuring itself that ... the claims asserted in both suits are also the same." *Aaron,* 225 F.R.D. at 416 (internal quotations & citation omitted).

### *2. THE TWO PROPOSED COUNTERCLAIMS*

In addition to the foregoing, plaintiff contends that defendant has not pled fraud in the inducement with the specificity required under FED. R. CIV. P. 9(b) as there is " no explanation as to how the misrepresentations were false and no factual pleading as to those events which give rise to a strong inference that MSC/Veritas had an intent to defraud or knowledge of the falsity," there is no identification of time, place, speaker and content of the alleged misrepresentations, and there is " no valid allegation of a misrepresentation of material fact." [FN17] (Dkt. # 110, at 19). Plaintiff also argues that defendant's new proposed claim of fraudulent misrepresentation [FN18] fails to state a claim upon which relief may be granted as such claim also fails to satisfy Rule 9(b), this pleading fails to allege any misrepresentation of a material fact, and the claimed misrepresentation that MSC assured FBF that it would secure funds is a statement of future expectation which is not actionable under Connecticut law. [FN19] (Dkt. # 110, at 20-21).

FN17. Specifically, plaintiff observes that defendant's allegation that MSC " did not have experience to obtain capital on an expedited basis," is disproved by the admissions in its proposed Amended Answer that defendant received an aggregate of $1.75 million in loans within three weeks of executing the finder's agreement. (Dkt. # 110, at 19; see Dkt. # 93, Exh. A).

FN18. The elements of fraudulent

Slip Copy                                                                                                                          Page 7
Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

misrepresentation are: " (1) ... a false representation was made as a statement of fact; (2) ... [such representation] was untrue and known to be untrue by the party making it; (3) ... [such representation] was made to induce the other party to act upon it; and (4) ... the other party did so act upon the false representation to his injury." *McCall v. City of Danbury,* 116 F.Supp.2d 316, 321 (D.Conn.2000) (citations omitted), *aff'd mem.,* 16 Fed. Appx. 77 (2d Cir.2001).

FN19. In support of its contention that defendant's claim is a future expectation which is not actionable under Connecticut law, plaintiff likens this case to *In re Paige,* 106 B.R. 346, 349-50 (Bankr.D.Conn.1989) (citation omitted), wherein the plaintiffs in that case made express misrepresentations that the business sold in the transaction at issue had a " positive cash flow and would make money." *Id.* at 349. In that case, the court dismissed the plaintiffs' claim for failure to state a cause of action on grounds that such statements were " opinion" and there " can be no statement of fact as to a future event." *Id.* at 350. In that case, such statement related to how a " given business will perform in the future." *Id.* In this case, MSC is in this financing business and the ability to secure funds is an integral aspect of its business operations. While it is conceivable that its statements were not opinions as to future expectations, but rather were assurances based on material facts, defendant has not alleged any specific facts that would support a conclusion that this statement was something other than a mere opinion or " aspirational" statement. *See McCall,* 116 F.Supp.2d at 321.

Federal Rule of Civil Procedure 9(b) reads: " In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit has held that Rule 9(b) requires that the allegations of fraud " (1) detail the statements (or omissions) that the [party] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements or (omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New*

*York,* 375 F.3d 168, 187 (2d Cir.2004) (citation omitted).

**\*5** In its proposed counterclaim for fraudulent misrepresentation, defendant seeks to allege that:
... MSC made misrepresentations of material fact to FBF including, but not limited to, the following:
a. Veritas through its alter ego, MSC, insisted that FBF agree to accept the Bridge Financing MSC arranged from its existing client base in order to sustain FBF's operations while MSC was raising the necessary investment capital, and
Veritas through its alter ego, MSC, assured FBF that MSC would secure the funds necessary to satisfy FBF's obligations in connection with the Bridge Financing prior to the Bridge Financing coming due and payable.
...
... If MSC had not repeatedly assured FBF that it would be able to secure the investment capital, FBF would not have agreed to the Bridge Financing and it would not have incurred the expenses associated with the development of the Adult Brand.

(Dkt. # 93, Exh. A, ¶¶ 57 & 60). As plaintiff correctly observes, defendant's proposed counterclaim for fraudulent misrepresentation does not state when and where the statements were made, and such proposed counterclaim does not include an allegation that any statements made by MSC were false. Accordingly, the proposed amendment is futile as the underlying allegations made in support of its claim for fraudulent misrepresentation do not detail the alleged misrepresentation to the extent required by the Second Circuit. *See Eternity Global Master Fund Ltd.,* 375 F.3d at 187.

Unlike its proposed counterclaim for fraudulent misrepresentation, defendant alleges its proposed counterclaim for fraud in the inducement with greater specificity,[FN20] and in doing so, defendant satisfies the stringent standard for pleading fraud, as set forth in Rule 9(b) and by the Second Circuit. (See Dkt. # 93, Exh. A, ¶¶ 68-83). Thus, although plaintiff correctly observes that one of defendant's alleged misrepresentations is irrelevant to this litigation,[FN21] the issue at this stage its not whether defendant will ultimately prevail on this claim, but whether defendant has stated its claim with sufficient particularity so as to be entitled to offer evidence in support of its claim. *See In re Everfresh Beverages, Inc.,* 238 B.R. at 571 (citation omitted).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

FN20. The elements of fraud in the inducement are: " (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." _Doctor's Assocs., Inc. v. Distajo,_ 107 F.3d 126, 134 (2d Cir.) (citations omitted), cert. denied, 522 U.S. 948 (1997).

Defendant alleges the following:

68. In September 2003, FBF was introduced to representatives of MSC, purportedly a private investment banking firm. Over the next month, FBF and MSC through its Managing Director engaged in frequent telephonic discussions and written correspondence.

69. The Parties' communications concerned FBF's efforts to secure capital to launch its new Adult Brand, as well as to continue marketing and distributing its existing product, Funny Meals.

70. During these communications, MSC aggressively represented and flaunted its claimed experience with similarly situated companies and assured FBF that, if retained, MSC would secure the needed capital on an expedited basis.

71. On or about November 7, 2003, certain FBF officers and directors had a face-to-face meeting with the Managing Director relating to MSC's interest in acting as FBF's investment banker.

72. At that meeting, MSC reiterated its myriad representations pertaining to MSC's financial worth, market share, reputation, contacts with potential investors and prior successful engagements.

73. Upon reassuring FBF of MSC's reliability, substantial experience and proclivity to raise the necessary capital, MSC advised FBF that capital raising efforts would commence immediately upon FBF's payment of a $50,000 retainer fee.

74. In reliance upon MSC's litany of promises and assurances that capital could be raised at a moment's notice and upon conducting the necessary due diligence, FBF enthusiastically retained MSC as its investment banker in order to ensure the successful launch of its Adult Brand. Later that day, FBF executed MSC's investment

banking the [sic] Agreement and immediately paid the $50,000 retainer fee.

75. MSC's support of FBF's vision led MSC to assure FBF that it could also secure bridge financing for FBF's benefit in addition to using " best effort" to raise capital. Thereafter, based upon MSC's commitment, the Parties agreed that MSC would arrange for bridge financing of approximately $1.25 million.

76. In or around mid-December 2003, roughly a couple of weeks before MSC's deadline to introduce FBF to financing sources that would invest at least $10,000,000.00, MSC voiced concern that third parties may attempt to take over capital raising efforts and steal the deal. Specifically, MSC warned FBF that third parties were interested in waiting for FBF to experience financial difficulty and attempt to acquire FBF for a drastically reduced price.

77. As a result, MSC requested an amendment to the Agreement that extended MSC's exclusivity for an additional six (6) months. FBF agreed to the Amendment because MSC continued to represent to FBF that it was the " go to" firm to achieve FBF's goals and had the expertise with similarly situated companies and had prior successful engagements.

78. Throughout the course of the Parties' relationship, MSC and McMahan touted MSC's expertise and unequivocal ability to obtain financing for FBF and represented to FBF that they would stand by FBF and provide FBF with resources so that FBF could maintain its economic viability. FBF would not have entered into the Agreement or subsequent Amendment with MSC or continued its relationship with MSC if MSC and McMahan had not made these representations. All of the representations and promises made by MSC and McMahan were material to FBF's decision to hire MSC, enter into the Agreement and subsequent Amendment and to continue its relationship with MSC and McMahan.

...

80. However, the representations made by MSC and McMahan were false and [they] knew or should have known the representations were false. MSC and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

McMahan did not have experience with similarly situated companies and did not have the experience to obtain capital on an expedited basis. In fact, MSC's only area of experience until August 2002 was in the convertible bond market.

...

(Dkt.# 93, Exh. A).

FN21. Defendant alleges that " MSC aggressively represented and flaunted its claimed experience" when in fact, " MSC's only areas of experience until August 2002 was in the convertible bond market," is irrelevant as the finder's agreement was not entered into until November 7, 2003. (See Dkt. # 93, Exh. A, ¶ 80; Dkt. # 110, at 19).

*3. THE TWO PROPOSED AFFIRMATIVE DEFENSES*

According to plaintiff, FBF's proposed new affirmative defenses, namely the Second and Fourth Affirmative Defenses, would have to be stricken for failure to comply with Rule 19(a) and Rule 9(b), respectively. In its proposed Second Affirmative Defense, defendant alleges that the recovery on the promissory notes should be denied for failure to join MSC as an indispensable party, and in its proposed Fourth Affirmative Defense, defendant asserts that " Veritas' Complaint is barred in whole or in part because FBF was fraudulently induced into entering into the Promissory Notes with Veritas." (Dkt. # 93, Exh. A, at 4-5; see Dkt. # 110, at 21-23).

**\*6** In light of the conclusion reached in Section I.B.2. *supra,* defendant's assertion of the Fourth Affirmative Defense, which corresponds to its proposed counterclaim for fraudulent inducement, is not futile. *See EBS Dealing Res., Inc. v. Intercontinental Exchange, Inc.,* 379 F.Supp.2d 521, 532 (S.D.N.Y.2005)( " fraud based affirmative defenses must be pled in accordance with [Rule] 9(b)" ); *but see Minuteman Press Int'l, Inc. v. Matthews,* 232 F.Supp.2d 11, 17-18 (E.D.N.Y.2002)(when the counterclaims alleging fraud are dismissed, the corresponding affirmative defenses are also subject to dismissal) (citation omitted).

According to plaintiff, defendant's proposed new Second Affirmative Defense, that recovery on the promissory notes should be denied for failure to join MSC as an indispensable party, would be stricken as

MSC is not a necessary party because MSC is not a party to the Promissory Note on which plaintiff is suing, and, assuming *arguendo,* that MSC were a necessary party, there is no indication that it could not be joined in this lawsuit. (Dkt. # 110, at 21-22). Rule 19(a) of the Federal Rules of Civil Procedure provides for the joinder of an absent party, if feasible, if the party to be joined will not deprive the court of jurisdiction over the subject matter of the action and, in the party's absence, " complete relief cannot be accorded among those already parties, ... the [party] claims an interest relating to the subject of the action," or the party to be joined must be present to protect its own or another party's interests.

Although MSC is not a party to the promissory notes on which plaintiff is suing, defendant first articulated its alter ego theory, upon which MSC's involvement is predicated, in its Answer, Affirmative Defenses and Counterclaim, filed on September 7, 2005. (See Dkt. # 76). In its Proposed Amended Answer and Affirmative Defenses and Amended Counterclaim (see Dkt. # 93, Exh. A, at 12-20), defendant has further asserted its three counterclaims under this alter ego theory, under which theory MSC would have an interest in the outcome of this litigation. *See College Craft Cos., Ltd. v. Perry,* 1995 WL 783612, at *6 (D.Minn. Aug. 9, 1995)(joinder was appropriate when although the party that plaintiffs sought to join was not a signatory to any contract with the plaintiffs, plaintiff had asserted that, under the doctrine of alter ego, this party should be held accountable for the action of its principals.). [FN22] Without making a finding as to whether plaintiff is the alter ego of MSC, defendant's claim for joinder is appropriate in light of its pursuit of such theory. That notwithstanding, as plaintiff acknowledges, there is no indication that MSC cannot be joined to this litigation and thus, dismissal under Rule 12(b)(7) would not be appropriate. However, as stated above, in treating plaintiff's futility arguments with an analysis comparable to that governing a motion to dismiss, the " issue is not whether [defendant] will ultimately prevail" with the assertion of this affirmative defense, " but whether [defendant] is entitled to offer evidence to support [its] claims." *In re Everfresh Beverages, Inc.,* 238 B.R. at 571 (internal quotations & citation omitted). This Court responds to this inquiry in the affirmative.

FN22. *See also Green Constr. Co. v. Kansas Power & Light Co.,* 1989 WL 117440, at *1 (D.Kan. Sept. 11, 1989)(defendant can

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assert a relief against a non-party under the theory plaintiff is actually the alter ego of the non-party sought to be joined.).

### C. PREJUDICE

*7 While this Court must consider all of the factors outlined by the Supreme Court in *Foman,* " resulting prejudice to the [plaintiff] is the most important factor in the court's analysis." <u>Concerned Citizens, 2002 WL 32124959, at *4</u> (citation omitted). The Second Circuit instructs that to determine what constitutes " prejudice," the trial court must consider whether the assertion of the proposed amended claims would " (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent ... plaintiff from bringing a timely action in another jurisdiction." <u>Block, 988 F.2d at 350</u> (multiple citations omitted). The court " must closely examine the nonmoving party's time and expenses spent preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by the proposed amendments." <u>Messier, 1999 WL 20907, at *3</u> (citation omitted).

As thoroughly outlined in Section I.B.1. *supra.,* plaintiff filed its initial Complaint two years ago, on July 19, 2004 (Dkt.# 1), later followed by its Amended Complaint on November 12, 2004, in response to which, defendant filed its Motion to Dismiss on November 22, 2004.<u>FN23</u> (Dkts. # # 33-34; see Dkt. # 30, ¶¶ 1-2). While defendant's Motion to Dismiss was pending, plaintiff filed its Motion for Summary Judgment (Dkts.# # 53-56), which defendant objected to, *inter alia,* on grounds that its Motion to Dismiss was still pending, it had not yet filed its Answer, and it required discovery to sustain its alter ego theory. (Dkt. # 60, at 10-13). Plaintiff's Motion for Summary Judgment was denied without prejudice to renew for failure to request a pre-filing conference. (Dkt.# 66). Defendant's Motion to Dismiss was denied on August 11, 2005 (Dkt.# 70), and defendant filed its Answer and Counterclaim on September 7, 2005, in which defendant asserted its alter ego theory in its affirmative defenses. (Dkt.# 76).

<u>FN23.</u> Defendant initially filed its Motion to Dismiss for lack of subject matter and personal jurisdiction on September 27, 2004, which was denied without prejudice to

renew for failure to comply with the Court's pre-filing requirement. (See Dkts. # # 5-6, 9-15 & 17). According to plaintiff, " [b]ecause [defendant's] motion failed to specify why the court lacked jurisdiction over FBF, the Court directed plaintiff to file an Amended Complaint alleging as specifically as possible why the Court had jurisdiction over FBF...." (Dkt. # 110, at 4). Judge Arterton also ordered personal jurisdiction discovery to close on January 22, 2005, which deadline was extended to March 18, 2005 by this Magistrate Judge. (Dkt. # 30, ¶ 3; Dkts.47-48).

Fourteen days later, Judge Arterton ordered that discovery close on November 28, 2005 and that plaintiff's " motion [for summary judgment] ... be restored to the active docket on November 28, 2005." (Dkt.# 78). Defendant sought an extension of this discovery deadline, which was granted in part by this Magistrate Judge, ordering discovery to end on December 20, 2005. (Dkts.88-90).

Approximately six weeks after the close of discovery, defendant filed the pending Motion to Amend its Answer, Affirmative Defenses and Counterclaim. <u>FN24</u> (Dkt.# 93). Two days later, plaintiff renewed its Motion for Summary Judgment originally filed on April 22, 2005. (Dkts. # # 96-101; see Dkt. # 53). As the foregoing demonstrates, procedurally, this case presents the " classic situation where courts deny leave to amend," as defendant now seeks to amend its answer and counterclaims " *after* discovery has been completed or the nonmoving party has filed for summary judgment." <u>Messier,1999 WL 20907, at *4</u> (emphasis in original) (citations omitted); *see also* <u>Krumme v. Westpoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir.1998)</u>. In a case such as this, " [w]here considerable time has elapsed" between the filing of plaintiff's Amended Complaint on November 12, 2004, and defendant's Answer and Counterclaim on September 7, 2005, in which defendant first asserted its alter ego theory in its affirmative defenses (Dkt.# 76), the " moving party has the burden to provide a satisfactory explanation for the delay...." <u>Messier, 1999 WL 20907, at *3</u> (multiple citations omitted).

<u>FN24.</u> On that same day, defendant also filed two discovery motions. (Dkts.# # 95, 102). On April 25, 2006, this Magistrate Judge granted in part and denied in part defendant's Motion to Compel and denied its

Slip Copy                                                                                                    Page 11

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

Motion for Sanctions. (Dkt.# 124).

**\*8** According to defendant, at the time it filed its initial Answer, Affirmative Defenses and Counterclaim, on September 7, 2005, " while it had discovered that Veritas was the alter ego of MSC, FBF has yet to engage in *any* substantive discovery in this matter." (Dkt. # 93, at 5)(emphasis in original). [FN25] Defendant contends that it was not until defendant reviewed Veritas' answers to Interrogatories and document production, and until defendant conducted the depositions of Veritas' Rule 30(b) witnesses and D. Bruce McMahan, that FBF discovered that it could assert additional claims against Veritas. *(Id.).*

> FN25. As stated above, FBF first enunciated its alter ego theory in its brief in opposition to plaintiff's Motion for Summary Judgment, filed May 31, 2005. (See Dkt. # 60, at 5, 10, 12).

Veritas' 30(b)(6) witness, Joseph Dwyer, was deposed on December 12, 2005 (see Dkt. # 111, Exh. 3); defendant took the videotaped deposition of D. Bruce McMahan on December 16, 2005 (see Dkt. # 95, Exhs. A & C); and, as stated above, discovery closed in this case on December 20, 2005 (see Dkt. # 90). Defendant filed this pending Motion to Amend six weeks after the close of discovery. There is no evidence of bad faith or dilatory motive in filing this Motion and such motion was filed shortly after the discovery of the information that serves as an evidentiary basis for asserting the additional claims against Veritas.FN26

> FN26. Plaintiff contends that the " proposed new counterclaims were pled on August 17, 2004" and " [d]iscovery was had in respect to one of the counterclaims on August 31, 2005 but FBF did not include either counterclaim in its Answer filed on September 7, 2005." (Dkt. # 110, at 11). While plaintiff is correct in its assertion, it is not clear that defendant was able to thoroughly discover the link between MSC, a party in *McMahan* in the Middle District of Florida in which the discovery was had at the end of August, to Veritas, the alleged alter ego of MSC, until FBF engaged in further discovery in this case in December 2005. Additionally, while the underlying Bridge Financing arranged by MSC is at

issue in the *Aldasoro* matter, in which the August 17, 2004 counterclaim was made, defendant was entitled to engage in discovery in this case to further identify the extent to which Veritas was involved with MSC before FBF asserted the same claims against Veritas as the alter ego of MSC as it has made in the *Aldasoro* matter and against MSC in the *McMahan* action in the Middle District of Florida.

Although defendant contends that " there would be no prejudice to Veritas if leave to amend is granted," (Dkt. # 93, at 5), Veritas would be prejudiced as discovery will have to be reopened for a limited period [FN27] and its pending Motion for Summary Judgment would have to be withdrawn and redrafted in light of the newly asserted claims. This notwithstanding, plaintiff has been on notice since May 2005 [FN28] that defendant planned to assert its alter ego theory and that defendant, albeit at the very end of the discovery period, [FN29] was engaged in discovery to support this theory. While defendant asserted its alter ego theory in its September 7, 2005 Amended Answer, Affirmative Defenses and Counterclaim, it was not until it completed discovery in December 2005 that defendant learned of the extent to which Veritas was allegedly acting as an alter ego of MSC, and thus, the extent to which its proposed amendments could be asserted *in this case,* which claims defendant has already asserted against MSC in the *McMahan* action in the Middle District of Florida and against Aldasoro in *Aldasoro* action in the Florida state court. Moreover, although discovery has closed and plaintiff's Motion for Summary Judgment is pending, this is the third time such Motion has been filed in this case and such Motion addresses several issues, relating to promissory notes upon which plaintiff seeks to collect, which will not be affected by the filing of defendant's Amended Answer, Affirmative Defenses and Counterclaims. Plaintiff's expenditure of " time, effort and money ... in litigating this matter," while undoubtedly considerable, does not, alone, " arise to ... substantial prejudice," so as to justify the denial of such amendment when balanced against the overall interest in resolving all claims in this matter and the efficient use of judicial resources. Block, 988 F.2d at 351 (citations and internal quotations omitted).

> FN27. As defendant sought and was granted several extensions of the discovery deadline to complete discovery on its alter ego

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 12
Slip Copy, 2006 WL 2520262 (D.Conn.)
**(Cite as: Slip Copy)**

theory, further discovery is not necessary for defendant.

FN28. See note 25 *supra.*

FN29. As stated above, defendant did not depose McMahan or Veritas' 30(b)(6) witness until mid-December, and plaintiff objected to the extension of the close of discovery, from the November 28, 2005 deadline to December 20, 2005, on grounds that defendant was not actively pursuing discovery. (See Dkt. # 89).

**\*9** The foregoing notwithstanding, plaintiff correctly contends that defendant may not use Rule 15(a) as " a means of avoiding summary judgment...." *McCarthy v. Dun & Bradstreet Corp.,* 372 F.Supp.2d 694, 700 (D.Conn.2005) (citation omitted). In its Amended Complaint, plaintiff alleges *inter alia,* that FBF executed and delivered to plaintiff the two promissory notes at issue (see paragraphs 8 and 10), under the terms of which FBF promised to pay plaintiff on June 1, 2004, $500,000 with a interest rate of 6% per annum (paragraph 11); defendant defaulted in the payment of the notes (paragraph 12); FBF agreed that in connection with any legal action, plaintiff shall be entitled to receive from FBF payment of the principle amount of the notes plus interest and reasonable expenses of collection (paragraph 14); and FBF owes plaintiff the sum of $500,000 under note SBF-1, plus 6% interest commencing December 1, 2003, and costs and expenses of collection (paragraph 18). (Dkt. # 33, ¶ ¶ 8, 10-12, 14 & 18). In its Answer, Affirmative Defenses and Counterclaim, filed on September 7, 2005, defendant responded that the two promissory notes " speak for themselves" ; it " admit[ted]" that the two promissory notes were identical; it admitted the " quoted terms of the Promissory Notes set forth in paragraph 11 [of plaintiff's Amended Complaint], but den[ied] all further inferences and characterizations contained therein" ; in response to paragraphs 12 and 14, it " realleges and incorporates its responses to paragraphs 1 through 11 as if fully set forth herein," and it did not respond to paragraph 18. (Dkt. # 76, ¶ ¶ 8, 10, 11, 12 & 14).

In paragraphs 1 through 11 that defendant references in paragraphs 12 and 14 of its Answer, the only denials asserted by FBF are that it " denies" that venue is proper and that a second promissory note, SBF-1, was executed; however, FBF " [a]dmits" that

the terms of both promissory notes are identical and under the terms of each note, FBF promised to pay plaintiff $500,000 on June 1, 2004, together with a 6% interest rate. (Dkt. # 76, ¶ ¶ 1-11; see Dkt. # 33). Plaintiff contends that because " FBF's Answer fails to deny and thereby admits liability on at least one of the two notes, these facts are conclusively established and the Court should render summary judgment based upon such admissions." (Dkt. # 110, at 10).

In its proposed Amended Answer, defendant now seeks to assert that it " denies that allegations set out in paragraph 18 of the Amended Complaint and demands strict proof thereof" ; defendant did not reference paragraph 18 at all in its Answer, filed September 7, 2005 and the change in its proposed Amended Answer will serve to avoid summary judgment. (Dkt. # 93, Exh. A, at 4, ¶ 18; see Dkt. # 76). Additionally, plaintiff contends that defendant now " seeks to retract its admissions" in paragraphs 8, 10, 11, 12 and 14 of its proposed Amended Answer, which proposed amendments this Court agrees would not be permissive as such changes are made with the goal of avoiding summary judgment. *See Messier,* 1999 WL 20907, at \*5. However, a review of the changes made to paragraph 8, from a statement that " the Promissory Notes attached ... speak for themselves," to " Admit," would not serve to avoid summary judgment and thus, is a permissible amendment to defendant's Answer. As for the remaining disputed paragraphs 10, 11, 12 and 14, defendant seeks to avoid summary judgment by changing its admissions and its failures to deny, which are treated under Fed.R.Civ.P. 8(d) [FN30] as conclusive admissions. Accordingly, defendant's Motion to Amend its Answer is granted to the extent that it may amend paragraph 8 but denied with respect to the proposed amendments to paragraphs 10, 11, 12, 14 & 18.

FN30. Federal Rule of Civil Procedure 8(d) reads: " [a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

III. CONCLUSION

**\*10** For the reasons stated above, defendant's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim (Dkt.# 93) is *granted in part* such that defendant may make the proposed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2520262 (D.Conn.)

**(Cite as: Slip Copy)**

changes to paragraph 8 in its Answer, may add its Second and Fourth Affirmative Defenses and may add its counterclaim for fraudulent inducement, but *denied* as to the addition of paragraphs 10-12, 14 and 18 of its Answer, and *denied* as to the addition of its counterclaim for fraudulent misrepresentation for failure to state a claim upon which relief can be granted. Defendant's Amended Answer, Affirmative Defenses and Counterclaim, consistent with this Ruling, shall be filed **on or before August 21, 2006.** Discovery shall be reopened for the limited inquiry into defendant's fraudulent inducement counterclaim; *discovery on this limited issue shall close on September 29, 2006.*

See <u>28 U.S.C. § 636(b)</u> **(written objections to ruling must be filed within ten days after service of same);** <u>FED. R. CIV. P. 6(a)</u>, <u>6(e)</u> & <u>72</u>; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* <u>892 F.2d. 15, 16 (2d Cir.1989)</u> **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

D.Conn.,2006.
Veritas-Scalable Inv. Products Fund, LLC v. FB Foods, Inc.
Slip Copy, 2006 WL 2520262 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 'I'

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 330241 (E.D.N.Y.)
(Cite as: Slip Copy)

Gause v. Suffolk County
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Dwayne GAUSE, Plaintiff,
v.
SUFFOLK COUNTY, et al., Defendants.
No. 02CV4600(SJF)(WDW).

Jan. 25, 2007.

Dwayne Gause, Stromville, NY, pro se.
Robert A. Caccese, Suffolk County Attorney's Office, Hauppauge, NY, for Defendant.

OPINION & ORDER
FEUERSTEIN, J.

I. Introduction

*1 On August 14, 2002, *pro se* plaintiff Dwayne Gause (" Plaintiff" ) commenced this action with the filing of three (3) complaints, all alleging violations of his civil rights under 42 U.S.C. § 1983.[FN1] Plaintiff filed an Amended Complaint on December 19, 2005. Plaintiff now seeks leave to further amend his Complaint. For the reasons set forth below, Plaintiff's motion for leave to amend is denied.

FN1. By Order dated May 16, 2005, the Court consolidated the three (3) cases into lead case number 02-CV-4600.

II. Analysis

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend " shall be freely given when justice so requires." Notwithstanding the general rule, " it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.,* 22 F.3d 458, 462 (2d Cir.1994). A district court " plainly has discretion ... to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). The party

seeking leave has the burden of providing satisfactory reasons for the delay. *Id.*

Plaintiff filed his motion for leave to amend nearly four (4) years after he filed his original Complaint, and seven (7) months after he filed his first Amended Complaint. Discovery has been closed since September 30, 2004. Although mere delay by itself does not provide grounds for denying leave to amend, Plaintiff has offered no explanation for the inordinate delay. It appears that Plaintiff is not seeking to add a new claim but expand on the facts and allegations of one of the claims asserted in his original Complaint. *See* Complaint, Pages 15-16. The facts revolve around events that took place on May 17, 2000, and June 28, 2000, and directly involve Plaintiff. Clearly, Plaintiff was aware of these facts when he filed his original Complaint and there is no reason why they could not have been included in the original Complaint, or the Amended Complaint. *See NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.,* 262 F.Supp.2d 134, 150 (S.D.N.Y.2003) (motion to amend complaint denied where plaintiffs " had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion within the specified time period." ); *Priestley v. American Airlines, Inc.,* No. 89 Civ. 8265, 1991 WL 64459, at *1 (S.D.N.Y.Apr.12, 1991) (" [L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." ).

In addition to the unexplained delay, the defendants would be prejudiced by the proposed amendment. " [T]he longer the period of an unexplained delay, the less [that] will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (citations omitted). In determining what constitutes prejudice, the court considers whether the assertion of the new claim would: " (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (citations omitted).

*2 In this case, the long period of unexplained delay between the filing of the original complaint and this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                            Page 2

Slip Copy, 2007 WL 330241 (E.D.N.Y.)

**(Cite as: Slip Copy)**

motion for leave to amend requires a minimal showing of prejudice. This case is not in its infancy; it was commenced over four (4) years ago. Discovery is complete. If the motion were granted, discovery may have to be reopened because the proposed amendment asserts additional facts and allegations. As it currently stands, the Court is ready to entertain dispositive motions in this case or set the case down for trial. Further delay in ultimately resolving this dispute will prejudice the defendants. *See Zahra v. Town of Southold,* 48 F.3d 674, 685-86 (2d Cir.1995) (motion for leave to amend appropriately denied when made two and one-half (2 1/2 ) years after commencement of action).

Given the untimely filing of the motion, the absence of good cause justifying the delay in adding new information to the claim, and the prejudice that the defendants would suffer, Plaintiff's motion for leave to amend is denied.

### V. Conclusion

For the reasons set forth above, Plaintiff's motion to for leave amend his Complaint is DENIED.

IT IS SO ORDERED.

E.D.N.Y.,2007.
Gause v. Suffolk County
Slip Copy, 2007 WL 330241 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 'J'

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.)**

Clark v. Westchester County
S.D.N.Y.,1998.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Kenneth CLARK, Plaintiff,
v.
Westchester County, Westchester County
Department of Correction, Westchester
Department of Correction Medical Department,
Officer Willis, Sergeant Simmons, # 107, T.A.C.
Team, aka " Ninja Turtles" , and John Does # 1
Through # 4, Defendants.
**No. 96 CIV. 8381(DLC).**

May 1, 1998.

John S. Pokalsky, New York, for plaintiff.
Alan D. Scheinkman, Westchester County Attorney,
Kyle C. McGovern, Assistant County Attorney,
White Plains, for defendants.

*OPINION and ORDER*
COTE, District J.
**\*1** On November 7, 1996, Kenneth Clark (" Clark" )
commenced this action as a consequence of the brutal
mistreatment that he alleges he received while a
pretrial detainee at the Westchester County Jail in
Valhalla, New York, during two incidents on
November 12, 1995 and February 3, 1996. Clark's
original complaint named two individual defendants,
Officer Peter Willis (" Willis" ) and Sergeant Ronnie
Simmons (" Simmons" ), as well as Westchester
County, the Westchester County Department of
Corrections, and the Westchester County Department
of Corrections Medical Department. The initial
pleading also listed four John Doe defendants who
were part of a prison response team Clark identified
as the " Ninja Turtles." Two matters are before the
Court at this time: first, in a motion to amend dated
January 6, 1998, Clark seeks to add as individual
defendants those John Does he has now identified by
name; second, the defendants have moved for
summary judgment and have opposed the motion to
dismiss. For the following reasons, the motion for
summary judgment is granted in part and in part
denied, and the motion to amend is denied.

BACKGROUND

Briefly, Clark contends that he was beaten severely
on November 12, 1995, after guards interrupted his
visit with family and friends at the Westchester
County Jail. According to the Complaint, Willis and
other officers beat Clark while Simmons watched.
Clark was thereafter examined by a nurse, who also
mistreated him. Simmons, Willis, and others then
refused Clark further medical treatment, and
Simmons filed a false disciplinary report against him,
which resulted in Clark being placed in solitary
confinement.

Following this incident, Clark filed a notice of claim
against Willis and others, which allegedly led Willis
to threaten Clark. This in turn caused Clark to file
another complaint, regarding Willis's threat.
Consequently, on February 3, 1996, Willis and other
officers attacked Clark in his cell and brutally beat
him again. Clark alleges that the Westchester County
doctor refused to treat him after this second beating,
saying to the officers involved, " I'm not going to be
responsible for what you did to him." Clark was then
taken to the Grassland Hospital in Valhalla, from
which he was later prematurely removed by unnamed
officers.

The Complaint's first cause of action, based on all of
the preceding events, charges both Willis and
Simmons under 42 U.S.C. §§ 1983 and 1988, as well
as the Fifth, Eighth, Ninth, and Fourteenth
Amendments to the U.S. Constitution. It appears
from this pleading that the following conduct is at
stake: Willis's attack on Clark and Simmons's failure
to protect Clark on November 12; both men's refusal
to provide Clark with medical care after the
November 12 incident; Simmons's filing of a false
report; and Willis's retaliatory threat and subsequent
retaliatory attack against Clark on February 3.[FN1] The
second cause of action is brought under Section 1983
against the organizational defendants for official
policies and customs that permitted the attacks to
occur. Counts three to five plead state law claims
sounding in assault, battery, and negligence.

> FN1. Although the Complaint also asserts an
> Equal Protection claim, it does not identify
> any protected class to which Clark belongs,
> and in any event is not otherwise discussed
> by the parties. The Court shall assume that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.)**

the Equal Protection claim is no longer being pursued.

DISCUSSION

A. *Motion for Summary Judgment*

**\*2** The defendants' motion for summary judgment seeks dismissal of the entire action. Summary judgment may not be granted unless the submissions of the parties taken together " show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must " set forth specific facts showing that there is a genuine issue for trial," and cannot rest on " mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P.; *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

To begin with, the defendants note correctly that Clark's claims, brought by him as a pretrial detainee, should have been asserted under the Fifth and Fourteenth Amendments, and not under the Eighth and Ninth Amendments. *See, e.g., Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.1991) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). [FN2] The claims based on the Eighth and Ninth Amendments are therefore dismissed.

> FN2. The Ninth Amendment, concerning unenumerated rights, simply has no application in these circumstances.

The defendants further contend that under the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995),

Clark's thirty day confinement in administrative keeplock, pending a hearing on disciplinary charges, was not a significant or atypical hardship, and therefore does not create a liberty interest sufficient to trigger the protections of the Due Process Clause. In any event, the defendants argue that Clark has not alleged that he was deprived of any of the procedural protections guaranteed by *Hewitt v. Helms,* 459 U.S. 460, 468-69, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In response, Clark maintains that he was denied adequate notice of the charges against him in connection with the confinement, inasmuch as the written charges were " slid under the door [while Clark was] in solitary confinement." Clark also contends that the defendants' documents are in error in indicating that he " refused to sign, answer questions or make statement [sic]" at the time that he was served with such notice.

*Hewitt* requires only that an inmate " *receive some notice of the charges against him and an opportunity to present his views* to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476 (emphasis added). As indicated by his memorandum in opposition to this motion, Clark does not dispute that he received such notice-it was slipped under the door to his cell. Rather, Clark's complaints appear to be that he was denied an opportunity to sign the form on which a prisoner customarily acknowledges service of the notice, and that the form erroneously reflects that he refused to sign the acknowledgment. But inasmuch as Clark is not disputing that he received pre-hearing notice of the charge against him-which the documents show was served on November 12, the day of the incident and eight days before the hearing-there is no issue of fact necessitating a trial of the procedural Due Process claim. Thus, without reaching the issue of whether 30 days of keeplock confinement creates a liberty interest for a pretrial detainee, it is appropriate to dismiss the Due Process claim relating to the administrative confinement and hearing process following the November attack because Clark has failed to establish a factual dispute as to whether he was deprived of any of the procedural protections to which he is entitled.

**\*3** The defendants argue that Clark's claims for deliberate indifference to his medical needs must be dismissed as well because (i) he has failed to demonstrate that he had any serious medical need that went untreated following the November incident;

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.)

Page 3

(ii) the nurse who examined Clark after that incident was not deliberately indifferent to his needs; (iii) his injuries following the February incident were not serious and were treated by the hospital staff; and (iv) his discharge from the hospital was based on the recommendation of the hospital staff. The defendants do not address the only claim regarding medical treatment as to which Clark names the individual defendants-his claim that they refused to provide him access to medical care after the November attack-other than indirectly, by their contention that he had no serious medical need requiring such care at that time.[FN3]

> FN3. In fact, it appears from the materials submitted in connection with the summary judgment motion that neither Willis nor Simmons refused Clark medical care after the November attack. Instead, it appears that the nurse who examined Clark refused his request to see a doctor. Because the defendants chose not to focus their motion on the issue of the personal involvement of the two individual defendants, however, Clark has not had an opportunity to identify all of the evidence that might bear on this issue.

Clark contends that he was in extreme pain following the November assault, that the evidence concerning the nature of the assault corroborates his claim of pain, and that he did not receive adequate medical treatment for that pain. The existence of pain may constitute a serious medical need. *See, e.g., Hathaway v. Coughlin,* 99 F.3d 550, 552 (2d Cir.1996). Because there is a disputed issue of fact as to whether Clark was in extreme pain that required more medical care than he received, and because the defendants do not contest that both Willis and Simmons were personally involved in the decision as to what medical care Clark could receive for his complaint of pain in November, summary judgment on this portion of Clark's claim for inadequate medical care is inappropriate. Nevertheless, because Clark failed to name either individual defendant in connection with his other medical care complaints, those other claims are dismissed as to the two individual defendants.

The defendants move to dismiss the excessive force claims on the ground that the force that was admittedly used in both November and February was not excessive under the circumstances. Summary

judgment is likewise inappropriate on these claims because there are disputed issues of fact regarding the provocation for the incidents, the amount of force used, and the extent of the injuries to Clark. Alternatively, the two individual defendants contend that they are entitled to qualified immunity on the excessive force claims because the force they used was necessary and reasonable under the circumstances. Factual disputes about the nature and the degree of force used, as well as the necessity for the use of force, preclude a grant of qualified immunity prior to trial.

Relying on *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the institutional defendants move for summary judgment as to all claims against them. They argue that Clark has failed to establish that these defendants had a policy or custom that resulted in the two attacks alleged in the Complaint. *See Board of County Comm'rs of Bryant County v. Brown,* 520 U.S. 397, ---- - ----, 117 S.Ct. 1382, 1387-88, 137 L.Ed.2d 626 (1997); *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985). Clark responds that he has carried his burden of establishing a basis for his claim in three ways: (i) that the officers would not have acted as they did if they had been properly trained and supervised; (ii) that because the institutional defendants failed to respond to Clark's complaint about Willis's threat, they are responsible for Willis's subsequent February attack on Clark; and (iii) that Clark has identified three other inmates who were attacked by officers and thereafter refused medical care, just as he was.

*4 The Court concludes that Clark has carried his burden of raising a factual issue, requiring resolution at trial, concerning the training and supervision of officers engaged in physical confrontations with inmates, and the provision of medical care after the November attack. Clark has not, however, carried his burden of establishing any deliberate indifference to his serious medical needs after the February attack. He was taken to a hospital and treated following that incident, and he has failed to identify any serious medical need that went untreated or any adverse effect upon him from any delay in sending him to the hospital. Even with respect to the dispute regarding his discharge from the hospital, Clark has not identified any serious medical need that went unaddressed because of the discharge, whether premature or not, and whether or not occasioned by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.)

Page 4

the hospital or the prison staff.

Finally, the defendants move to dismiss as a matter of law Clark's claims for punitive damages against the institutional defendants and against the individual defendants in their official capacity. The motion is granted under the doctrine established in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), that " § 1983 plaintiffs may not recover punitive damages against a municipality." *Jefferson v. City of Tarrant,* 522 U.S. 75, ----, 118 S.Ct. 481, 485, 139 L.Ed.2d 433 (1997).

In sum, the summary judgment motion is granted except for the following claims: (1) that Simmons and Willis used excessive force or allowed its use in the November 1995 incident; (2) that Simmons and Willis interfered with Clark receiving proper medical attention after the November 1995 incident; (3) that Willis used excessive force or allowed its use in February 1996; and (4) that the County and its Department of Correction failed adequately to supervise and train its officers, and therefore are responsible for the use of excessive force by those officers in the November and February incidents and for any interference with an injured inmate's receipt of medical care after the November incident.

B. *Motion to Amend*

Through a motion to amend his Complaint, Clark seeks to add as party defendants ten individuals who are alleged to have been members of a team that participated in the assaults on Clark in November and February. Clark also has moved for imposition of fees and costs associated with bringing this motion because the County has refused to consent to the amendment. In circumstances such as these, where consent to amend has been denied, the party seeking to amend its pleadings may do so " only by leave of court ... and leave shall be freely given when justice so requires." Rule 15(a), Fed.R.Civ.P. The Supreme Court has set forth clear guidelines on when courts should allow such amendments:

In the absence of any apparent or declared reason- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be " freely given."

*5 *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2nd Cir.1995) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Refusal to grant leave to amend " without justification is ' inconsistent with the spirit of the Federal Rules.' " *Id.* (quoting *Foman,* 371 U.S. at 182). In other words, " [d]elay alone unaccompanied by such a ' declared reason' does not usually warrant denial of leave to amend." *Id.* at 234-35 (citation omitted).

A brief description of the procedural history behind the motion will assist in understanding its resolution. At a March 7, 1997 conference, the parties agreed to, and the Court set, a discovery cut-off of October 17, 1997. Through his First Request for Production of Documents, Clark asked for documents that would identify the so-called " Ninja Turtles" by March 28, 1997. Pursuant to this Court's direction, the defendants supplied-in a May 31 Response that plaintiff's counsel says he received at latest in mid June-the names of those officers working on the " S.S.T." team during the relevant shifts. By way of an October 16, 1997 letter, plaintiff's counsel requested (and defense counsel consented to) an extension of discovery until November 14, which the Court approved through an October 16 endorsement. At a November 21 conference with counsel for both parties, the Court discussed a summary judgment motion that the defendants sought to bring, and set a briefing schedule for that motion. Clark's counsel made no mention at that time of a desire to amend the original pleadings, or of the need to add additional defendants to the action. At some point, discussions apparently took place between counsel regarding the defendants consenting to an amendment of the pleadings. On November 21, 1997, Clark requested in writing that the defendants notify him whether they would consent to the amendment of the pleadings or whether motion practice would be necessary. On December 5, 1997, the County advised plaintiff's counsel in writing that it could not stipulate to add individual defendants to the action. On December 9, 1997, plaintiff's counsel informed the Court for the first time of a desire to amend the pleadings to add additional defendants.

The defendants oppose the motion to amend on three grounds: (i) that it is untimely, coming after the close of discovery and more than six months after Clark learned the identity of the individuals he now wishes to add; (ii) that the amendment would severely

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.)**

prejudice the added defendants because they are being sued, *inter alia,* for punitive damages, as to which the County may not indemnify them; and (iii) that the state law claims against the proposed defendants do not relate back to the original complaint under Rule 15(c), Fed.R.Civ.P., and therefore are barred. With respect to the last argument, it is undisputed that under New York law, intentional torts are governed by a one year statute of limitations, and negligence claims against a municipality or its employees are governed by a statute of limitations of one year and ninety days.

**\*6** The Court finds that the motion to amend is untimely, for the following reasons, and therefore should be denied. First, discovery has long been closed; the addition of these defendants will require that it be reopened, at great prejudice and expense to the institutional defendants (let alone the newly added individual defendants), and thereby significantly delay the further conduct of the litigation. Second, and perhaps more important, Clark was given the identities of the individuals he now seeks to add as parties well within the discovery period-indeed, at least five months before the close of discovery-yet he has adduced no justification for his delay in seeking to add them. In these circumstances, their addition is untimely, and the motion to amend must therefore be denied.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted in part and in part denied, and the motion to amend is denied. In addition, it is hereby

ORDERED that the further conduct of pretrial proceedings in this case shall be governed by the Pretrial Scheduling Order filed simultaneously with this Opinion.

SO ORDERED:

S.D.N.Y.,1998.
Clark v. Westchester County
Not Reported in F.Supp., 1998 WL 214772 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.